Je Yon Jung, Esq. (SBN #329774)
Law Office of Je Yon Jung
1100 W. Town & Country Rd.
Suite 1250
Orange, CA 92868
(949) 326-7070
jyj@jeyonjunglaw.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. STUART,<br>JOSE L. FELIX,<br>and A.F.<br><br>                Plaintiffs,<br>vs.<br><br>COUNTY OF RIVERSIDE,<br>SAYORI BALDWIN, BRIDGETTE<br>HERNANDEZ, BRIANNA HALL<br>TARA CORONEL, and DOES 1<br>THROUGH 10,<br><br>                Defendants. | CASE NO.<br><br>COMPLAINT FOR DAMAGES<br>and DEMAND FOR JURY TRIAL |

**COME NOW**, Plaintiffs, who allege upon information and belief as

follows: This is a complaint for damages based on upon federal civil rights,

state constitutional rights, and state statutory and common law violations

committed by the Defendant County of Riverside and its respective officials,

employees, and/or agents, Defendants Sayori Baldwin, Bridgette Hernandez,

Brianna Hall, Tara Coronel, and Does 1 through 10.

## JURISDICTION

1.  Plaintiffs bring this case pursuant to 42 U.S.C. §§ 1983, 1988 and California's Constitution and state law. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1343 (1-4). Supplemental jurisdiction exists over the state claims and Defendants pursuant to 28 U.S.C. §1367.

2.  Plaintiffs have fully satisfied the Tort Claims Act as to California state law claims made herein.

## VENUE

3.  The claims alleged herein arose from events or omissions that occurred in the County of Riverside. Therefore, venue lies in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

### *Plaintiffs*

4.  Plaintiff Thomas E. Stuart ("Mr. Stuart") is a resident of the State of California. At all times material to this Complaint, Mr. Stuart was a private citizen of the State of California, United States of America.

5.  Plaintiff Jose L. Felix ("Mr. Felix") is a resident of the State of California. At all times material to this Complaint, Mr. Felix was a private citizen of the State of California, United States of America.

6.      Plaintiff A.F. (a fictitious name is used herein to protect his privacy) is a resident of the State of California. At all times material to this Complaint, A.F. was a private citizen of the State of California, United States of America.

7.      Plaintiffs are referred to collectively at times herein as "Plaintiffs."

### *Defendants*

8.      Plaintiffs are informed, believe, and thereupon allege that Defendant COUNTY OF RIVERSIDE ("Defendant County") is a duly constituted governmental entity in the State of California, and is, or was, the employer of all individually named Defendants including, but not limited to, those who are sued in their individual and official capacities, as well as one, or all, of Defendant DOES 1 through 10.

9.      Plaintiffs are informed, believe, and thereupon allege that Defendant SAYORI BALDWIN ("Defendant Baldwin") was at all times material herein a policy maker and/or supervisor and acting under color of law within the course and scope of her employment and office as the Director of the Riverside County Department of Public Social Services ("DPSS").  She is being sued individually and in her official capacity.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 3

10.    Plaintiffs are informed, believe, and thereupon allege that Defendant BRIDGETTE HERNANDEZ ("Defendant Hernandez") was at all times material herein a policy maker and/or supervisor and acting under color of law within the course and scope of her employment and office as the Deputy Director of the Riverside DPSS.  She is being sued individually and in her official capacity.

11.    Plaintiffs are informed, believe, and thereupon allege that Defendant BRIANNA HALL ("Defendant Hall") was at all times material herein a policy maker and/or supervisor and acting under color of law within the course and scope of her employment and office as a Supervisor for the Riverside DPSS.  She is being sued individually and in her official capacity.

12.    Plaintiffs are informed, believe, and thereupon allege that Defendant TARA CORONEL ("Defendant Coronel") was at all times material herein acting under color of law within the course and scope of her employment and office as a Social Services Practitioner III of DPSS. She is being used individually and in her official capacity.

13.    The identities, capacities, and/or nature of involvement of Defendant DOES 1 through 10 ("Doe Defendants") are presently unknown to Plaintiffs. Plaintiffs therefore sue such persons using "Does" as

fictitiously-named defendants. Plaintiffs are informed, believe, and thereupon allege that there is likely to be evidentiary support to prove that each Doe Defendant was involved in some manner and legally responsible for the acts, omissions, and/or breaches of duty alleged below. Plaintiffs will amend the Complaint to name the Doe Defendants upon learning their true identities and roles in the actions complained of herein.

14.   All of the facts, acts, omissions, events, and circumstances herein mentioned and described in the County of Riverside, State of California, and the corporate and/or entity Defendant, and each of them, are residents of the County of Riverside, State of California, and/or have their principal place of business in said County and State, and/or doing business in said County and State.

15.   Plaintiffs are informed, believe, and thereupon allege that all Defendants employed by Defendant County were, at all times relevant and material to this Complaint, acting within the course and scope of their employment duties for Defendant County, and under color of law.  Plaintiffs are informed, believe, and thereupon allege that each of the individual Defendant's acts were known to, discovered by, approved by, and/or ratified by Defendant

County, by and through their policy makers, decision makers, officials, officers, and/or supervisors, including named Defendants, and applicable Doe Defendants.

16.  Plaintiffs are informed, believe, and thereupon allege that all Defendants employed by Doe Defendants, at all times relevant and material to this Complaint, were acting within the course and scope of their employment duties for Doe Defendants, under color of law. Plaintiffs are informed, believe, and thereupon allege that each of the individual Defendant's acts were known to, discovered by, approved by, and/or ratified by Doe Defendants, by and through policy makers, decision makers, and/or supervisors, including applicable Doe Defendants.

17.  Plaintiffs are informed, believe, and thereupon allege that officials, supervisors, policy makers, and other individuals with the authority to set or modify municipal and/or departmental policy, *de jure* or *de facto,* of Defendant County and/or Doe Defendants, participated in, approved of, ratified, and/or failed to prevent the acts by all Defendants and Doe Defendants of which Plaintiffs complain herein.

18.  Plaintiffs are informed, believe, and thereupon allege that at all

times herein mentioned,  each  of  the  Defendants-including

officials,  supervisors,  and other policy makers  from Defendant

County  and/or  Doe Defendants and their agents-was the agent,

employee, or co-conspirator of one other, some, or all of their Co-

Defendants. Plaintiffs are informed, believe, and thereupon allege that

each of the Defendants, acting individually and/or in concert with

each other, engaged in a common plan to wrongfully deprive

Plaintiffs of their respective rights, interests, and liberties, as such

rights are afforded under the United States Constitution and the

California State Constitution and conspired generally to damage

Plaintiffs and inflict great injury upon them.

19.    Defendants are referred to collectively at times herein as

"DEFENDANTS."

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

20.    A.F. was born in 2002.

21.    A.F. had been in the custody of his biological mother from birth until

approximately the age of five, when he was first placed into

Defendant County's Child Protective Services due to neglect as a

result of his biological mother's methamphetamine addiction, drug

abuse and repeated incarceration.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 7

22.  A.F. was removed from his biological mother's home by the Defendant County, Department of Public Social Services ("DPSS").

23.  From the age of five (5), until he was adopted by his parents at the age of ten (10), A.F. was placed in multiple temporary foster homes.

24.  A.F.'s biological mother's rights were terminated in 2012, when A.F. was nearly ten (10) years of age.

25.  Although A.F.'s biological father was identified on A.F.'s birth certificate, he had no contact with and took no responsibility for A.F. throughout his life.

26.  Due to neglect, absence of a parent or caretaker, placement in multiple temporary foster homes, enrollment in multiple schools, abandonment from his biological mother and father, and the absence of consistent and meaningful nurturing and care for nearly ten (10) years, it is not surprising that A.F. struggled throughout his adolescence, including suffering from significant learning disabilities, stunted or delayed educational development, severe emotional instability and behavioral issues, and other severe negative psychological and behavioral effects.

27.  Mr. Stuart and Mr. Felix began the adoption process for adopting

A.F. in 2012.

28.    During the adoption process, the family court judge ordered A.F.'s putative biological father to submit to a DNA test. The test was completed and A.F.'s biological father was confirmed through DNA testing.

29.    As a result of the confirmed DNA testing, A.F.'s biological father was given the option to proceed with parental unification with A.F. However, he declined and completely and irrevocably surrendered his parental rights to A.F.

30.    A.F. was adopted by Mr. Stuart and Mr. Felix in 2012.  A.F. was ten (10) years old.

31.    Mr. Stuart and Mr. Felix also adopted A.F.'s younger brother, who shared the same mother as A.F., but different fathers.

32.    After A.F.'s adoption by Mr. Stuart and Mr. Felix, A.F. made significant progress with his educational, emotional, and behavioral development. However, he continued and continues to suffer from the multiple negative impacts of his adolescent childhood prior to adoption.

33.    Not surprisingly, A.F. has many unresolved psychological impacts and emotional difficulties related to the his childhood before he was

adopted, including feelings of severe abandonment and neglect, rejection, shame, and humiliation.

34.     A.F.'s childhood trauma and abandonment has manifested itself throughout the course of his adolescent and adult development, including, but not limited to, bursts of anger, resentment, depression, anxiety, attachment disorders, and despair.

35.     Notwithstanding A.F.'s childhood trauma and abandonment, and because of the love and care he received from his parents, Plaintiffs Stuart and Felix, A.F. has overcome a significant number of hurdles and barriers. He made progress in managing, coping, and even overcoming some of his disadvantages, disabilities, and challenges. For example, A.F. graduated from high school, was an all-star club level water polo player, and obtained admission and an athletic scholarship to attend a Division I university.

36.     However, that progress and trajectory was severely vitiated, destroyed, impeded, derailed, and disrupted in June 2021, and continues to negatively affect A.F. as well as the progress Plaintiffs Stuart and Felix made individually with A.F. and as a family unit.

37.     On or about June 11, 2021, Defendant Coronel, who is or was at the

time employed as a social worker or "Social Services Practitioner III," with the Riverside County DPSS, used her credentials and position to unlawfully access the Defendant County's computer systems and electronic records.

38.     Defendant Coronel was able to and did unlawfully access confidential closed adoption records related to A.F.'s adoption by Plaintiffs Stuart and Felix.

39.     Defendant Coronel used the information that she unlawfully obtained through the DPSS electronic records and data to attempt to contact A.F.

40.     On or about June 13, 2021, Defendant Coronel contacted the Facebook account of the water polo club to which A.F. belonged. Defendant Coronel sent a Facebook message to the water polo club and stated: "This might be a long shot but do you have contact information for [A.F.]?"

41.     The water polo club responded, "Hi-We can't give out athlete's info, but you can send over your email address / phone and we can forward to his parents." Defendant Coronel responded: "Hello, I believe [A.F] was adopted years ago. If this is him, his birth name was [redacted]. [redacted] If you can please pass my information along. Tara Coronel.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 11

[redacted].

42.  The water polo club forwarded the message to A.F.'s parents, Mr. Stuart and Mr. Felix on the same day.

43.  As a result of this outreach and communication, Mr. Stuart and Mr. Felix were severely distressed and confused about the contact, the method of contact, and, most importantly, the potential negative impact it would have on A.F.'s progress and mental health.

44.  Mr. Stuart and Mr. Felix spoke to A.F. about the contact from Defendant Coronel.

45.  Defendant Coronel's purported and later determined fabricated outreach on behalf of A.F.'s biological father, was the first contact A.F. had ever received from his biological father in his 18 years of life.

46.  At the time of Defendant Coronel's contact, A.F. was 18 years of age. A.F. was conflicted about the outreach but agreed to the contact with Defendant Coronel, primarily because A.F. wanted answers to, if not a confrontation about, so many questions he had about his childhood and abandonment by his father.

47.  The Plaintiffs agreed that they would reach out to Defendant Coronel together.

48.   The Plaintiffs called Defendant Coronel on June 18, 2021.

49.   Defendant Coronel answered the telephone and indicated that she is A.F.'s biological father's sister-in-law.

50.   Defendant Coronel erroneously and fraudulently told Plaintiffs that A.F.'s father had been looking for A.F., but he was not available at that time as he was at work.

51.   Defendant Coronel told A.F. that if he ever felt "unwanted," that it was not true. A.F. asked again to speak directly with his biological father.

52.   Defendant Coronel requested that A.F. call back the next morning at 10:00 am to speak to his biological father.

53.   Before ending the call, Defendant Coronel asked if there were any specific questions she could convey to his biological father but  A.F. declined as he wanted to speak directly to his biological father.

54.   After the call, all three Plaintiffs continued to suffer significant anxiety and  negative physical and emotional effects from the call and outreach by Defendant Coronel, purportedly on behalf of A.F.'s biological father, as well as the anticipation of the call the following morning.

55.   On June 19, 2021, around 10:00 am, Plaintiffs called Defendant

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 13

Coronel's number. Defendant Coronel's sister and A.F's biological father's wife, Terry Coronel, answered the phone and explained that she is A.F.'s biological father's current wife. Terry Coronel also proceeded to disclose that A.F.'s biological father was not at home, that he did not know about the call with A.F., that he did not know about Defendant Tara Coronel's outreach, and that A.F.'s biological father was never involved and never requested Defendant Coronel's outreach effort to A.F.

56.   This shocking revelation caused all three Plaintiffs to become extremely upset and distressed over Defendant Coronel's purposes, intentions, and motivations to interfere with A.F.'s life and familial relationships.

57.   Mr. Stuart and Mr. Felix demanded to know how Defendant Coronel found them, given that it was a closed adoption. Initially, Defendant Coronel lied and said that A.F.'s father had hired a private investigator and had been looking for him for years.

58.   Plaintiffs challenged Defendant Coronel's fraudulent claims and told her that they knew it was not true, given the confidential nature of the information in the closed adoption.

59.   Defendant Coronel then indicated that she found Mr. Felix's name on

"adoption paperwork" and then looked him up on Facebook. She

indicated that she saw a picture of A.F. with his water polo club team,

so she reached out to the water polo club on Facebook.

60.   Plaintiffs were very upset and insisted that Defendant Coronel was

lying because of the closed adoption process, which included a name

change, and the inability to identify them or A.F., unless she accessed

confidential information.

61.   Defendant Coronel became very defensive, ugly, and angry that

Plaintiffs Stuart and Felix, who are A.F.'s parents, were even getting

involved in their son's life and business because he was 18 years of

age.

62.   The call continued to escalate, particularly because of Defendant

Coronel's lies to Plaintiffs, lies about A.F.'s biological father's lack of

knowledge regarding the outreach, and lies about Defendant

Coronel's access to confidential information.

63.   Defendant Coronel screamed at Plaintiffs: "He's 18! Why are you

getting so involved?" and hung up the phone on Plaintiffs.

64.   On June 21, 2021, Mr. Felix conducted an internet search and learned

that Defendant Coronel was employed by the Defendant County, `

DPSS, as a social worker.

65. On June 21, 2021, Mr. Stuart contacted DPSS and spoke to Defendant Breanna Hall.

66. Over the course of several days, Plaintiffs were contacted by a DPSS investigator, who indicated they would conduct an investigation, but that the Plaintiffs may not be informed about the results of the investigation.

67. On or about September 14, 2021, Plaintiffs received a form letter indicating a "notice of data breach" and that Defendant Coronel was no longer employed by DPSS. No further information was provided to Plaintiffs.

68. Upon information and belief, an investigation was conducted and it was confirmed that Defendant Coronel unlawfully and without authorization used her DPSS access and authority to obtain confidential information about Plaintiffs A.F., Mr. Stuart, and Mr. Felix.

69. Defendant County's investigation indicated that the Defendant County and/or Defendants Hernandez and Hall were unclear on the methods of unauthorized access by Defendant Coronel, the statutes and laws at issue, the procedures for such a breach and notification requirements, and their referral obligations for unauthorized access.

For example, Defendants were unaware that Defendant Coronel obtained unauthorized access of A.F.'s information, until it conducted a state audit of computer and electronic access.

70. Upon information and belief, Defendants did not provide any prophylactic measures, including training, to ensure confidentiality and unauthorized access to such data and information by its unauthorized employees.

71. Defendant Coronel was allowed to resign from her position as a social worker for DPSS. Upon information and belief, Defendant Coronel received all benefits and privileges associated with her resignation from DPSS and no further punishment, criminal referrals, penalties, or negative actions were taken against Defendant Coronel, as a result of her unlawful actions.

72. No criminal referral, charges, or actions were made or brought against Defendant Coronel.

73. Defendant Coronel continues to practice and/or is a licensed professional clinical counselor in the state of California.

74. To date, Plaintiffs continue to suffer damages, including mental pain and suffering, as a result of Defendants' acts and omissions.

*Facts Related to PRA claims*

75.     On October 18, 2021, undersigned counsel sent via U.S. Postal Service to DPSS, Defendant Sayori Brown, Administrative Office, 4060 County Circle Drive, Riverside, CA 92503, a Public Records Act Request ("PRA") under Gov't Code §§ 6250 et seq., California Penal Code §§832.7-832.8, and Art. I, § 3(b) of the California Constitution for information related to Defendant Coronel's unauthorized access to Plaintiffs' data and information.

76.     On that same day, undersigned counsel sent Defendant County, Clerk of the Board of Supervisors, a Claim for Damages pursuant to Cal. Gov. Code, §910 *et seq.*[1]

77.     With respect to the PRA, Plaintiffs did not receive a response within the requisite statutory timeframe. Accordingly, undersigned counsel reached out to DPSS for a status update on or about November 9, 2021, and was told by a representative in the records office that no such request was received.

_____

[1] On or about November 15, 2021, Plaintiffs, through undersigned counsel, received a "rejection of claim" of Plaintiffs' claim for damages and notifying Plaintiffs that they had six months to file relevant state claims.

78.     On November 9, 2021, undersigned counsel re-sent the PRA to DPSS

records office via facsimile. In short, the PRA requested

> a copy of all records relating to the report, investigation,
> findings and administrative discipline related to Tara Coronel'
> employment, termination, criminal referral, if any, and
> investigation file related to the 'data breach' related to the
> closed adoption of John Doe 1 and John Doe 2 by Jose Felix
> and Thomas Stuart. Records include all investigative reports;
> photographic, audio, and video evidence; transcripts or
> recordings of interviews; personnel files; all materials compiled
> by the law enforcement agency and provided to the Office of
> the District Attorney, if any, and/or any records created by the
> Office of the District Attorney during the course of its
> investigation, or relied upon in its determination whether to file
> criminal charges, if applicable.

79.     On or about November 14, 2021, DPSS indicated that it would need a

14-day extension, in addition to the statutory ten (10) days, to respond

to Plaintiffs' PRA request.

80.     On or about December 3, 2021, undersigned counsel received a letter

from DPSS, with objections and claims of confidentiality and

indicated that documents would begin on a rolling basis on February

15, 2022.

81.     Defendant has sought no less than four (4) extensions of time to

complete its production of documents in response to Plaintiffs' PRA,

indicating, in part, the voluminous nature of the production. However,

the Defendant County's production to date has only included

approximately 37 pages of documents directly related to Defendant

Coronel, approximately 26 pages of publicly available general

department policies, and a three-page blank/template confidentiality

and information user agreement.

82.     Each delayed and extended production has been limited to duplicative

productions. For example, on February 15, 2022, Defendant County

indicated that it was "continuing to retrieve and review some of the

items you requested which *may* be sent at a later date." (emphasis

added).  No date was given as to when Plaintiffs could anticipate

additional responsive documents. Accordingly, on March 15, 2022,

having received no further documents or communication,

undersigned counsel was required to proactively request a date certain

from Defendant County to comply with its PRA obligations.

83.     On March 17, 2022, Defendant County responded that it was

"continuing to review and do [sic] anticipate providing additional

responsive information. It is anticipated that additional information

will be provided on or before April 15, 2022."

84.     Given the statute of limitations applicable for state violations, and

Defendant County's continued delays and/or dilatory conduct,

undersigned counsel requested completion of all document requests

as soon as possible or agreement to entry of a tolling agreement. No response was provided by Defendant County.

85. On April 15, 2022, Defendant County produced duplicative email documents, with the addition of three additional emails from July 1, 2021, which should have been available and produced in the first production in February 2022. Moreover, Defendant County once again indicated that "if additional disclosable items are identified," that it "anticipate[s] their disclosure on or about May 16, 2022"—a day after the statute of limitation runs for filing state actions against Defendant County.

86. To date, neither Plaintiffs nor undersigned counsel have received a response to Plaintiffs' request for a tolling agreement.

87. Upon information and belief and based on the sequence of productions, delays, and document produced to date, Defendant County's dilatory tactics  were intended to avoid liability and to run the statute of limitations such that Plaintiffs' claims would be barred.

## **DAMAGES**

88. Each of the acts throughout this Complaint by each Defendant directly and  proximately caused each of the Plaintiffs to suffer the following: violation of civil rights, loss of privacy, loss of enjoyment

of privacy, invasion of privacy, interference with familial relationship, loss and interference with liberty interests, interference with freedom of association, humiliation, emotional injury, pain and suffering, great and extreme mental anguish.

89.   Plaintiffs endured, and continue to endure, substantial pain and suffering due to each and every act and omission of all Defendants, and each of them.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**
**Fourteenth Amendment**
**(Substantive Due Process and Familial Relationship)**
**By All Plaintiffs Against All Defendants**

90.   Plaintiffs incorporate all paragraphs, as though fully set forth herein.

91.   At all times, each of the Defendants was acting under color of state law in the performance of his or her official duties.

92.   Each of these Defendants' acts and omissions deprived each Plaintiff of his particular rights under the Constitution and laws of the United States.

93.   Each Plaintiff has and had Fourteenth Amendment substantive due process rights to familial association, which includes the right of parents and children to not have interference by the state regarding

the parent-child relationship.

94. Plaintiffs allege that Defendants' actions interfered with Plaintiff Mr. Stuart's fundamental familial right to parent A.F., without government interference.

95. Plaintiffs allege that Defendants' actions interfered with Plaintiff Mr. Felix's fundamental familial right to parent A.F., without government interference.

96. Plaintiffs allege that Defendants' actions interfered with Plaintiff A.F.'s fundamental rights to his familial relationship with his parents, Mr. Stuart and Mr. Felix, without government interference.

97. Defendants' actions or omissions caused interference with the constitutionally protected familial relationship and was for purposes of oppression and interference of the familial relationship.

98. Defendants had no legitimate interest in interfering with the Plaintiffs' parent-child relationship.

99. Defendants' actions or omissions violated Plaintiffs' liberty interests in their mutual companionship and nurturing interests.

100. Defendants' actions were intentional and with deliberate deprivation and/or indifference to the liberty interests of Plaintiffs.

101. The complained of acts of Defendants were shocking to the

conscience, beyond the bounds of acts tolerable in a civilized society, and so egregious and outrageous that they may fairly be said to shock the contemporary conscience.

## SECOND CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)
### First Amendment (Familial Association)
### By All Plaintiffs Against All Defendants

102.   Plaintiffs incorporate all paragraphs, as though fully set forth herein.

103.   At all times, each of the Defendants was acting under color of state law in the performance of his or her official duties.

104.   Each of these Defendants' acts and omissions deprived each Plaintiff of his particular rights under the Constitution and laws of the United States.

105.   Each Plaintiff has and had First Amendment familial association rights, which includes the right of parents and children to not have interference by the state regarding the parent-child relationship and association.

106.   Plaintiffs allege that Defendants' actions interfered with Plaintiff Mr. Stuart's familial association right to parent A.F., without government interference.

107.   Plaintiffs allege that Defendants' actions interfered with Plaintiff Mr. Felix's familial association right to parent A.F., without government interference.

108.   Plaintiffs allege that Defendants' actions interfered with Plaintiff A.F.'s familial association right to his familial relationship with his parents, Mr. Stuart and Mr. Felix, without government interference.

109.   Defendants' actions or omissions caused interference with the constitutionally protected familial relationship and was for purposes of oppression and interference of the familial relationship.

110.   Defendants had no legitimate interest in interfering with the Plaintiffs' parent-child relationship.

111.   Defendants' actions or omissions violated Plaintiffs' familial association rights in their mutual companionship and nurturing interests.

112.   Defendants' actions were intentional and with deliberate deprivation and/or indifference to the familial association interests of Plaintiffs.

113.   The complained of acts of Defendants were shocking to the conscience, beyond the bounds of acts tolerable in a civilized society, and so egregious and outrageous that they may fairly be said to shock the contemporary conscience.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)
### Unconstitutional Policy, Custom, or Procedure (*Monell*)
### By All Plaintiffs Against Defendant County

114.   Plaintiffs incorporate all paragraphs, as though fully set forth herein.

115.   This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to them by the First and Fourteenth Amendments to the United States Constitution.

116.   Defendant County violated Plaintiffs' constitutional rights, as alleged supra, by creating and maintaining the following unconstitutional customs and practices, inter alia:

(i)   Plaintiffs allege that Defendant County has a *de facto* policy, custom, and/or practice of not protecting individual privacy rights, particularly individuals who have participated in a closed and private adoption;

(ii)   Plaintiffs allege that Defendant County has a *de facto* policy, custom, and/or practice of intentionally and/or willfully disregarding the sanctity and rights of a familial relationship;

(iii)   Plaintiffs allege that Defendant County has a *de facto* policy, custom, and/or practice of intentionally and/or willfully

disregarding the sanctity and rights of a familial association;

(iv)   Plaintiffs allege that Defendant County has a *de facto* policy, custom, or practice of inadequately monitoring and/or investigating their employees' misconduct, including unauthorized access to confidential information, electronic records, and databases;

(v)   Plaintiffs allege that Defendant County has a *de facto* policy, custom, or practice of not ensuring and for allowing unauthorized access to confidential information maintained on its databases and computer systems;

(vi)   Plaintiffs allege that Defendant County has a *de facto* policy, custom or practice of failing to discipline, failing to investigate, and or retaining, personnel who falsely and unlawfully obtain unauthorized access to confidential and/or private information in violation of constitutional rights; and

(vii)   Plaintiffs allege that Defendant County has a *de facto* policy, custom or practice of condoning, ratifying, failing to discipline, failing to investigate, failing to monitor, and of retaining, personnel who falsely and unlawfully obtain unauthorized access to confidential and/or private information in violation of

constitutional rights; into contact in violation of constitutional rights.

117. Defendant County's policies or customs caused and were the moving force and/or affirmative link behind some or all of the violations of Plaintiffs' constitutional rights at issue in this case.

118. Plaintiffs are informed, believe, and thereupon allege that these policies, practices, customs, and procedures are intentional and/or the result of deliberate indifference on the part of Defendant County, by and through its decision makers.

119. The foregoing unconstitutional customs and practices were a direct and legal cause of harm to Plaintiffs.

120. Plaintiffs specifically allege that Defendant County's policy, custom, and/or practices, as described herein, were within the control of Defendant County and within the feasibility of Defendant County, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiffs.

## FOURTH CLAIM FOR RELIEF
**VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**
**Failure to Train, Supervise, Discipline, or Correct**
(*City of Canton & Larez*)
**By All Plaintiffs Against Defendants County,**
**Baldwin, Hernandez, and Hall**

121. Plaintiffs incorporate all paragraphs, as though fully set forth herein.

122. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to him by the First and Fourteenth Amendments to the United States Constitution.

123. Defendants County, Baldwin, Hernandez, and Hall violated Plaintiffs' constitutional rights, as alleged supra, by creating and maintaining the following unconstitutional customs and practices, inter alia:

    (i)    Plaintiffs are informed, believe, and thereupon allege that Defendants County, Baldwin, Hernandez, and Hall individually and collectively have and had ample reason to know that employees may use their County passwords and computer access to engage in the misconduct and unauthorized access set forth in this entire complaint;

    (ii)    Plaintiffs are informed, believe, and thereupon allege that

Defendants County, Baldwin, Hernandez, and Hall individually and collectively have failed to properly train, supervise, and/or discipline employees, officers, managers, and supervisors within DPSS as to the legal requirements, obligations, and protections applicable to persons set forth in the United States and California Constitutions and other laws; and

(iii)   Plaintiffs allege that these failures amount to a *de facto* policy and are intentional and/or the result of deliberate indifference on the part of Defendants County, Baldwin, Hernandez, and Hall, individually and collectively, by and through its decision makers. These include, but are not limited to Defendants Baldwin, Hernandez, and Hall and their subordinates, as necessary to further these improper policies, practices, customs, and procedures.

124.   The foregoing unconstitutional customs and practices were a direct and legal cause of harm to Plaintiffs.

125.   Defendants Baldwin, Hernandez, and Hall individually and collectively acted in a supervisory capacity with respect to the incidents involving Plaintiffs. In that capacity, Defendants Baldwin, Hernandez, and Hall acted intentionally, maliciously, and in

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 30

conscious disregard, and/or with deliberate indifference to the rights of Plaintiffs.

126. These supervisory failures of Defendants Baldwin, Hernandez, and Hall directly caused and contributed to Plaintiffs' damages.

127. Plaintiffs specifically allege that Defendants County, Baldwin, Hernandez, and Hall's policy, custom, and practice, as described *supra*, was within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiffs.

### FIFTH CLAIM FOR RELIEF
### CALIFORNIA CONSTITUTION, Cal const. Art. I, § I
### (Right to Privacy)
### By All Plaintiffs Against All Defendants

128. Plaintiffs incorporate all paragraphs, as though fully set forth herein.

129. This cause of action arises under the Constitution of the State of California, which provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

130. Plaintiffs have legally protected liberty and privacy interests. These interests necessarily extend to the facts, data, and information related

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 31

to the confidential and closed adoption of A.F. by Plaintiffs Stuart and Felix.

131. Plaintiffs have a reasonable expectation of privacy related to their confidential and closed adoption through the DPSS.

132. Defendants' acts and/or omissions constituted a serious and egregious invasion of Plaintiffs' liberty and privacy interests secured by the California Constitution.

## SIXTH CLAIM FOR RELIEF
### NEGLIGENCE
### By All Plaintiffs Against All Defendants

133. Plaintiffs incorporate all paragraphs, as though fully set forth herein.

134. This cause of action arises under the general laws and Constitution of the State of California.

135. Plaintiffs have complied with the California Tort Claims Act.

136. For purposes of this claim for relief, allegations are deemed to sound in negligence, and set forth pursuant to Cal Civ Code § 1714.

137. In performing all of the complained of acts and omissions throughout this Complaint by way of their conduct, defendants, and each of them, have breached the duty to act reasonably under the circumstances described.

138. As a direct and proximate result of the foreseeable conduct

throughout this Complaint, plaintiffs have suffered and continue to suffer great emotional pain and injury, all in an amount to be determined according to proof at trial.

## SEVENTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### By All Plaintiffs Against Defendant Coronel

139.    Plaintiffs incorporate all paragraphs, as though fully set forth herein.

140.    As outlined in detail above, Defendant Coronel's conduct was outrageous, particularly given her position, training, and experience as a social worker.

141.    Defendant Coronel was aware or should have been aware of the potential severe and negative effects of her false pretenses, lies, and selfish motivations for contacting Plaintiffs.

142.    No reasonable person could characterize Defendant Coronel's actions as anything but outrageous.

143.    Defendant Coronel's actions was reckless, at a minimum, and was intended to cause emotional distress to Plaintiffs or a deliberate, reckless and/or willful disregard of the emotional distress to Plaintiffs.

144.    Defendant Coronel intentionally lied to Plaintiffs regarding A.F.'s biological father's involvement in the purpose and manner of

Defendant Coronel's outreach, and his efforts to seek a connection with A.F. after over 18 years of abandonment.

145. No reasonable person, particularly a professional clinical counselor, would believe that such lies and false pretenses would not severely and negatively affect A.F., a young man who had been abandoned, neglected and traumatized by his biological father's absence and abandonment for over 18 years.

146. No reasonable person, particularly a professional clinical counselor, would believe that such lies and false pretenses would not severely and negatively affect A.F.'s parents, Plaintiffs Stuart and Felix. In fact, Defendant Coronel's clearly outrageous and egregious actions are further highlighted by her screaming at A.F.'s parents: "He's 18! Why are you getting so involved?" and hanging up the phone on Plaintiffs.

147. Plaintiffs have suffered and continue to suffer severe emotional distress from Defendant Coronel's actions. Any and all emotional progress that Plaintiffs individually and collectively made over the many years since A.F. was adopted at the age of ten by Mr. Stuart and Mr. Felix, suffered regression, decline, and damage.

148. Defendant Coronel's actions caused Plaintiffs individually and

collectively to suffer ongoing and severe anxiety, shame, humiliation, exacerbated feelings of abandonment, depression, grief, and anger.

**EIGHTH CLAIM FOR RELIEF**
**LARCENY (Ca. Pen. Code, § 502, subd. (e))**
**By All Plaintiffs Against Defendant Coronel**

149. Plaintiffs incorporate all paragraphs, as though fully set forth herein.

150. Defendant Coronel knowingly accessed and without permission used data, computer, computer system, or computer network in order to either (a) devise or execute any scheme or artifice to defraud or deceive or (b) wrongfully control or obtain data in violation of Ca. Pen. Code, § 502(c)(1).

151. Defendant Coronel knowingly accessed and without permission took, copied, or made use of data form a computer, computer system, or computer network, whether existing or residing internal or external to a computer, computer system, or computer network in violation of Ca. Pen. Code, § 502(c)(2)

152. Defendant Coronel knowingly accessed and without permission used or caused to be used computer services in violation of Ca. Pen. Code, §502(c)(3).

153. Defendant Coronel knowingly without permission accessed or caused

to be accessed any computer, computer system, or computer network in violation of Ca. Pen. Code, §502(c)(7).

154.   All of the actions by Defendant Coronel were conducted based on her access, duties, and responsibilities given to her by Defendant County in her role as a Social Services Practitioner III with the DPSS at the Defendant County.

155.   Defendant County, through their negligent training, protection, and supervision, allowed Defendant Coronel to obtain unauthorized access to its computer, computer system, or computer network in violation of Ca. Pen. Code, §502(c).

156.   Defendant Coronel engaged in the willful violation of the provisions of Ca. Pen. Code, §502(c) and is guilty of fraud or malice as defined by Ca. Civ. Code §3294(c).

157.   Defendant County engaged in the willful violation of the provisions of Ca. Pen. Code, §502(c) and is guilty of fraud or malice as defined by Ca. Civ. Code §3294(c).

### NINTH CLAIM FOR RELIEF
### INFORMATION PRACTICES ACT of 1977
### (Ca. Civ. Code, § 1798 *et seq.*)
### By All Plaintiffs Against Defendant County

158.   Plaintiffs incorporate all paragraphs, as though fully set forth

herein.

159.  Plaintiffs have a right to privacy as a personal and fundamental right protected by Section 1 of Article I of the Constitution of California. Plaintiffs have a right of privacy in information pertaining to them.

160.  Defendant County failed to comply with provisions of the Information Practices Act of 1977, Ca. Civ. Code, §1798 *et seq.*, and, as a result, such acts or omissions had substantial adverse effects on Plaintiffs.

161.  Plaintiffs suffered damages, including mental suffering, as a result of Defendant County's acts or omissions related to Plaintiffs' invasion of privacy under federal and state constitutions and laws.

**TENTH CLAIM FOR RELIEF**
**CALIFORNIA PUBLIC RECORDS ACT**
**(Ca. Gov. Code, § 6259 *et seq.*)**
**By All Plaintiffs Against Defendant County**

162.  Plaintiffs incorporate all paragraphs, as though fully set forth herein.

163.  Defendant County has improperly withheld public records Plaintiffs requested and are entitled to under Ca. Gov. Code §6259.

164.  Defendant County has made piecemeal productions and serial delays responding to Plaintiffs' PRA requests since October of 2021 and as

of the date of this Complaint, continues to delay timely and complete production.

165.   Defendant County is delaying complete and timely production of relevant responsive public records documents beyond Plaintiffs' statute of limitations for timely filing state causes of action against the County in violation of its obligations under the California PRA, Ca. Gov. Code §6259 *et seq.*

166.   Over the course of six (6) months, Defendant County has failed to produce to Plaintiffs complete and timely disclosure of certain public records related to the Plaintiffs' PRA request involving the unauthorized access and data breach by Defendant Coronel, former employee of Defendant County.

167.   Despite Plaintiffs' very specific, detailed, and individualized request for records as follows:

> I seek a copy of all records relating to the report, investigation, findings and administrative discipline related to Tara Coronel' employment, termination, criminal referral, if any, and investigation file related to the "data breach" related to the closed adoption of John Doe 1 and John Doe 2 by Jose Felix and Thomas Stuart. (See attached "Data Breach" Notice). Records include all investigative reports; photographic, audio, and video evidence; transcripts or recordings of interviews; personnel files; all materials compiled by the law enforcement agency and provided to the Office of the District Attorney, if any, and/or any records created by the Office of the District

Attorney during the course of its investigation, or relied upon in its determination whether to file criminal charges, if applicable.

Defendant County erroneously objected to Plaintiffs' request "on the ground that [Plaintiffs'] request does not adequately describe the records sought." Moreover, Defendant County also indicated that the County "will not produce materials compiled by any law enforcement agency, nor will it produce any records created [sic] any law enforcement agency during the course of its investigation."

168. Defendant has sought no less than four (4) extensions of time to complete its production of documents in response to Plaintiffs' PRA, indicating, in part, the voluminous nature of the production. However, the Defendant County's production to date has included approximately 37 pages of documents directly related to Defendant Coronel, approximately 26 pages of publicly available general department policies, and a three-page blank/template confidentiality and information user agreement.

169. Each delayed and extended production has been limited to duplicative productions. For example, on February 15, 2022, Defendant County indicated that it was "continuing to retrieve and review some of the items you requested which *may* be sent at a later date." (emphasis

added).  No date was given as to when Plaintiffs could anticipate additional responsive documents. Accordingly, on March 15, 2022, having received no further documents or communication, undersigned counsel was required to proactively request a date certain from Defendant County to comply with its PRA obligations.

170.  On March 17, 2022, Defendant County responded that it was "continuing to review and do [sic] anticipate providing additional responsive information. It is anticipated that additional information will be provided on or before April 15, 2022."

171.  Given the statute of limitations applicable for state violations, and Defendant County's continued delays and/or dilatory conduct, undersigned counsel requested completion of all document requests as soon as possible or agreement to entry of a tolling agreement. No response was provided by Defendant County.

172.  On April 15, 2022, Defendant County produced duplicative email documents, with the addition of three additional emails from July 1, 2021, all of which should have been available and produced in the Defendants' first production in February 2022. Moreover, Defendant County once again indicated that its production remains incomplete and that "if additional disclosable items are identified," that it

"anticipate[s] their disclosure on or about May 16, 2022"—a day after the statute of limitation runs for filing state actions against Defendant County.

173.  Defendant County has improperly withheld and delayed production and completion of its obligations under the PRA, including multiple extensions of more than 14 days, in violation of Ca. Gov. Code, §6253(c).

174.  To date, Plaintiffs remain unclear on the complete production of responsive documents to Plaintiffs' PRA, Defendant County is improperly withholding documents related to its investigation of Defendant Coronel to prevent accurate and timely civil prosecution of these violations, and Defendant County is improperly withholding documents related to Defendant County's *Monell* and *City of Canton* and *Larez* liability with respect to Defendant Coronel and/or other County employees' unauthorized access to confidential information.

175.  Defendant County's improper delays and withholding of responsive documents is in violation of Ca. Gov. Code §6253 *et seq.*

## <u>ELEVENTH CLAIM FOR RELIEF</u>
### NEGLIGENT HIRING, SUPERVISION, and RETENTION OF EMPLOYEE
### By All Plaintiffs Against Defendant County

176.   Plaintiffs incorporate all paragraphs, as though fully set forth herein.

177.   Defendant County of Riverside had a duty to supervise Defendant Coronel to ensure that she exercised her duties and responsibilities as a Social Services Practitioner within the bounds of her authorization and access to Defendant County of Riverside's computers, data, and records.

178.   Defendant County of Riverside was negligent in its supervision of Defendant Coronel and failed to ensure that she exercised her duties and responsibilities as a Social Services Practitioner within the bounds of her authorization and access to Defendant County of Riverside's computers, data, and records.

179.   Defendant County of Riverside's negligence in hiring, supervising, and retaining Defendant Coronel proximately caused the Plaintiffs' foreseeable injuries.

## TWELFTH CLAIM FOR RELIEF
### VICARIOUS LIABILITY (Ca. Gov. Code § 815.2)
### By All Plaintiffs Against Defendant County

180.   Plaintiffs incorporate all paragraphs, as though fully set forth herein.

181.   Defendant County of Riverside is vicariously liable through the doctrine of *respondeat superior* for all of Defendants' state violations and Plaintiffs' injuries and damages at California Government Code § 815.2.

182.   Plaintiffs' injuries were caused by Defendant Coronel's role and authorization granted by her employer, DPSS and Defendant County of Riverside.

183.   Defendant Coronel's access to computer networks, data, and information related to closed adoptions, including A.F.'s confidential and closed adoption, was a direct result of Defendant Coronel's employment status with DPSS and Defendant County of Riverside.

184.   It was a foreseeable risk, if not known risk, that Defendant Coronel and/or other employees of DPSS and/or Defendant County of Riverside would or could engage in unauthorized access to Defendant's computers, data, and records.

185.   Defendant Coronel's ability to access Defendant's computers, data,

and information at issue in this matter was required or incidental to her duties and responsibilities as a Social Services Practitioner, III and/or it was reasonably foreseeable that she would have such access.

186. Defendant County is liable to Plaintiffs for the acts of its public employees, the individual Defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of *respondeat superior*, codified at California Government Code § 815.2.

## VII.     PRAYER FOR RELIEF

187. **WHEREFORE**, Plaintiffs pray for the following relief from Defendants, and each of them, for each of the above causes of action:

(i)     For compensatory damages, including general and special damages, according to proof;

(ii)    For punitive damages pursuant to 42 U.S.C. §1983 and California Civil Code § 3204, 52.1(b), and Ca. Pen. Code §502(e)(4), and any other applicable laws or statutes, in an amount sufficient to deter and make an example of each Defendant;

(iii)   For exemplary damages in accordance with Ca. Civ. Code, §1798.53, and any other applicable provisions;

(iv)    For statutory damages, according to proof;

(v)     For prejudgment interest according to proof;

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 44

(vi)   For reasonable attorney fees pursuant to 42 U.S.C. §1983, 1988; California Civil Code §§ 52.1, 52(b)(3); California Code of Civil Procedure 1025.1, Ca. Pen. Code §502(e)(2), Ca. Gov. Code, §6259(d), and Ca. Civ. Code, §1798.45-1798.48, and any other applicable provisions;

(vii)  For costs of suit and litigation;

(viii) For injunctive relief; and

(ix)   For such further relief which is just and proper.

Dated this 25th day of April, 2022.

*Je Yon Jung*

Je Yon Jung (SBN #329774)
Law Office of Je Yon Jung
1100 W. Town & Country Rd.
Suite 1250
Orange, CA 92868
(949) 326-7070
jyj@jeyonjunglaw.com

*Attorney for Plaintiffs*

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 45