Je Yon Jung, Esq. (SBN #329774)
**MAY JUNG, LLP**
333 City Blvd. West
Suite 327
Orange, CA 92868
(818) 869-6476
jeyon@mayjung.com

*Attorney for Plaintiffs*

Tara Coronel
1967 Carroll Drive
San Jacinto, CA 92583
misstarac@yahoo.com

*In Pro Se*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. STUART, JOSE L. FELIX, and A.F. <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF RIVERSIDE, TARA CORONEL, TAMARA CORONEL, WARREN PAUL, and DOES 1 THROUGH 10, <br><br> Defendants. | CASE NO.: 5:22-CV-0701-SPG (MAR) <br><br> **JOINT BRIEF RELATED TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS TARA CORONEL, TAMARA CORONEL, AND WARREN PAUL, AND DEFENDANT CORONEL'S OPPOSITION TO PLAINTIFFS' MOTION** <br><br> Hearing Date: Jan. 17, 2024 <br> Hearing Time: 1:30 PM <br> Courtroom: 5C <br> Honorable Sherilyn Peace Garnett |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................ 1

  A. Plaintiffs' Introduction ........................................................ 1

  B. Defendant Coronel's Introduction ..................................... 2

II. STATEMENT OF FACTS ...................................................... 3

  A. Plaintiffs' Statement of Facts ............................................ 3

    B. Defendant Coronel's Statement of
  Facts ................................................ 7

III. LEGAL STANDARD ........................................................ 10

  A. Plaintiffs' Statement of Legal Standard ......................... 10

  B. Defendant Coronel's Statement of Legal Standard ........... 11

IV. ANALYSIS ........................................................................ 12

  A. Plaintiffs' Argument 1 ..................................................... 12

  1. Summary Judgment Should be Granted on Plaintiffs' First Cause of Action Against Defendant Coronel Brought Under 42 U.S.C. § 1983 for Violation of Plaintiffs' Substantive Due Process and Familial Relationship Rights ........................................................ 12

    a. Defendant Coronel was acting under color of state law when she engaged in the complained conduct ................................................. 12

    b. Defendant Coronel's conduct deprived Plaintiffs of their Constitutional right to familial association ........................................ 13

  B. Defendant's Argument 1 ................................................... 18

  C. Plaintiffs' Argument 2 ...................................................... 19

**1. Summary Judgment Should be Granted on Plaintiffs' Second Cause of Action Against Defendant Coronel Brought Under 42 U.S.C. § 1983 for Violation of Plaintiffs' First Amendment and Familial Relationship Rights.** ................................................................................ **19**

**D. Defendant's Argument 2** .................................................... **21**

**E. Plaintiffs' Argument 3** ...................................................... **22**

**1. Summary Judgment Should be Granted on Plaintiffs' Fifth Cause of Action Against the Individual Defendants Brought Under the California Constitution Article I, § 1 for Violation of Plaintiffs' Right to Privacy.** ...................................................................................... **22**

**F. Defendant Coronel's Argument 3** ........................................ **26**

**G. Plaintiffs' Argument 4** ........................................................ **26**

**1. Summary Judgment Should be Granted on Plaintiffs' Sixth Cause of Action Against the Individual Defendants for Negligence** ...................... **26**

    **a. The Individual Defendants owed Plaintiffs a duty of care** ............ **27**

    **b. The Individual Defendants Breached their duty** ......................... **27**

    **c. The Individual Defendants' Breaches Caused Plaintiffs' Injuries** ............................................................................... **28**

**H. Defendant Coronel's Argument 4** ........................................ **29**

**I. Plaintiffs Argument 5** ........................................................ **30**

**1. Summary Judgment Should be Granted on Plaintiffs' Seventh Cause of Action Against the Individual Defendants for Larceny** .................... **30**

    **a. The Individual Defendants knowingly accessed, took, and made use of or caused to be used a computer system, computer system, or computer network.** ................................................................. **30**

    **b. Plaintiffs suffered damage because of Plaintiffs' misconduct and therefore may bring private right of action for damages pursuant to California Penal Code section 502** ....................... **32**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**J.  Defendant Coronel's Argument 5**................................................................**33**

**V. Plaintiffs' Conclusion**................................................................**34**

# Table of Authorities

*Anderson v. Liberty Lobby Inc.,* 477 U.S. 242 (1986) ...................................... 11

*Balistreti v. Pacifica Police Dep't,* 901 F.2d 696 (9th Cir. 1990) ................... 12

*Barba v. City of Shafter,* 1:12-v-00195, 2015 U.S. Dist. LEXIS 23515, (E.D. Cal. Feb. 26, 2015)................................................................................... 21

*Board of Dirs. of Rotary Club v. Rotary Club of Duarte,* 481 U.S. 537 (1987)..19

*Bockrath v. Aldrich Chemical Co.,* 21 Cal. 4th 71 (1999) ….........................28

*Brown v. U.S. Taekwondo,* 11 Cal. 5th 204 (2021) …….…..........................27

*Castellon v. U.S. Bancorp.,* 220 Cal. App. 4th 994 (2013) ...........................26

*Castillo v. Cty. of Los Angeles,* No. 14-07702, 2015 WL 13639579, at *11 (C.D. Cal. Apr. 17, 2015............................................................................................. 20

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ............................................. 10

*County of Los Angeles v. Los Angeles County Employee Relations Com.,* 56 Cal. 4th 905 (2013) ................................................................................... 23

*Dang Vang v. Vang Xiong X. Toyed,* 944 F.2d 476 (9th Cir. 1991) ............. 13

*de Vries v. Brumback,* 53 Cal. 2d 643 (1960) ............................................. 32

*Doe v. San Diego,* 445 F. Supp. 3d 957 (S.D. Cal. 2020) ............................ 13

*Estate of Neil v. Cty. Of Colusa,* No. 2:19-cv-0244, 2022 WL 4291745, at *7 (E.D. Cal. Sept. 9, 2020) ......................................................................... 14, 15

*Garamendi v. Henin,* 683 F.3d 1069 (9th Cir. 2012) ....................................... 4

*Griffin v. Strong,* 983 F.2d 1544 (10th Cir. 1993) ........................................ 14

*Hernandez v. Hillsides,* 47 Cal. 4th 272 (2009) .............................................22, 25

*Hill v. NCAA,* 7 Cal. 4th 1 (1994) .......................................22, 23, 24, 25

*Keates v. Koile,* 883 F.3d 1228 (9th Cir. 2018) ……………………………… 19

*Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir. 2001) ..............................19

*Lehr v. Robertson,* 463 U.S. 248 (1983) ........................................................ 13

*Leonel v. Am. Airlines,* 400 F.3d 702 (9th Cir. 2005) .................................... 23

*Leslie G. v. Perry & Associates,* 43 Cal. App. 4th 472, 482-83 (1996) ........... 28

*Lewis v. Super. Ct.,* 4 Cal. 5th 561 (2017) ....................................................... 25

*Loder v. City of Glendale*, 14 Cal. 4th 846 (1997) ........................................... 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)...... 11

*Maupin v. Widling,* 192 Cal. App. 3d 568 (1987) ............................................ 29

*McDade v. West,* 223 F.3d 1135 (9th Cir. 2000) ............................................. 13

*Merrill v. Navegar.,* 26 Cal. 4th 465 (2001) .................................................... 27

*Mintz v. Bartelstein and Assoc. Inc.,* 906 F. Supp. 2d 1017 (2012) ............. 25, 32

*Mosier v. Southern California Physicians Insurance Exchange,*
63 Cal. App. 4th 1022 (1998) ............................................................................ 32

*Nguyen v. Kaiser Foundation Health Plan, Inc.,* No. SA CV 17-0905,
2018 WL 6131949, at *23 (C.D. Cal. July 27, 2018) ………………………… 20

*Nola M. v. University of Southern California,* 16 Cal. App. 4th 421
(1993) ................................................................................................................. 28

***Norman-Bloodsaw v. Lawrence Berkeley Lab,*** *135 F.3d 1260 (9th Cir. 1998)* ............................................................................. *23*

***Oregon Prescription Drug Monitoring Program v. U.S. Drug Enforcement Admin.,*** *998 F. Supp. 2d 957 (D. Or. 2014)* ..................................... *26*

***Osborn v. Irwin Memorial Blood Bank,*** *5 Cal. App. 4th 234 (1992)* ........... *28, 29*

***Pacific Fruit Express Co. v. Akron, Canton & Youngstown Railroad Co.,*** *524 F.2d 1025 (9th Cir. 1975).* ............................................................ *11*

***Patel v. Searles,*** *475 U.S. 574 (1986)* ........................................... *14, 21*

***People v. Childs,*** *220 Cal. App. 4th 1079, 1098-1102 (2013)* ......................... *31*

***Planned Parenthood Golden Gate v. Superior Court,*** *83 Cal. App. 4th 347 (2000)* ......................................................................................... *26*

***Porten v. University of San Francisco,*** *64 Cal. App. 3d 828 (1976)* ............. *23*

***Roberts v. Jaycees,*** *468 U.S. 609 (1984)* ............................................ *18*

***Rosenbaum v. Washoe Cnty.,*** *663 F.3d 1071 (9th Cir. 2011)* ...................... *14, 18*

***Rowland v. Christian,*** *69 Cal. 2d 108, 112 (1968)* .................................. *27*

***Santosky v. Kramer,*** *305 F.3d 130 (2d Cir. 2002)* ................................. *13*

***Shanghai Automation Instrument Co. v. Kuei,*** *194 F. Supp. 995, 1006 (N.D. Cal. 2001)* .............................................................................. *4*

***Trujillo v. City of Ontario,*** *428 F. Supp. 2d 1094 (2006)* ........................... *23*

***United States v. Christensen,*** *828 F.3d 763, 789 (9th Cir. 2016)* ................. *31*

***Washington v. Glucksberg,*** *521 U.S. 702 (1997)* .................................... *14*

***West v. Atkins,*** *487 U.S.42 (1988)* ............................................... *12, 18*

***Wyatt v. Union Mortgage Co.,*** *24 Cal. 3d 773 (1979)* .................................. *32*

**State Statutes**

Cal. Fam. Code § 9200 *et seq.* ....................................................................*23*

Cal. Civ. Code § 1798.24…………………………………… ...................... *23*

Cal. Civ. Code § 1714. …………………………………… .......................... *27*

Cal. Gov. Code § 820(a). …………………………… ................................ *27*

California Penal Code Section 502(c) …………… ...................................... *30, 31*

California Penal Code Section 502(e) …………… ...................................... *32*

## I.   INTRODUCTION

### A. PLAINTIFFS' INTRODUCTION

This case arises from an egregious invasion of the most private and sacred relationships that exist at the core of our constitutional protections and privileges. Over a decade ago, two committed individuals made the biggest decision of their lives to adopt a young boy (A.F.), along with his younger brother, to expand their family, home, and hearts. Adopting two boys, who had spent the majority of their childhood in the foster care system, was not a decision that was made lightly or without significant commitment. However, Plaintiffs Stuart and Felix ultimately decided to formally adopt A.F. and his brother because they knew that they were likely the boys' last chance and that they could provide them with the love and stability that they deserved. Their family was no less a family unit than if they were the biological parents. And their family unit was no less deserving of the full protections of our constitution and federal and state laws.

Defendants Tara Coronel ("Defendant Coronel"), Tamara Coronel, and Warren Paul (collectively, "Individual Defendants") intentionally violated every protection to which Plaintiffs were entitled and did so by using and abusing the unrestrained access that Defendant County provided to Defendant Coronel as a County social worker. The Individual Defendants and Defendant County's callous disregard for Plaintiffs' rights and privacy was reckless, if not blatant. Indeed, Defendants' liability and culpability are admitted, obvious, and/or undisputed on the record. Accordingly, Plaintiffs are entitled to summary judgment.[1]

---

[1] On July 28, 2023, a Notice of Default by the Court Clerk was entered against Tamara Coronel and Warren Paul. (See ECF 106.) To the extent the defaulting

## B. DEFENDANT CORONEL'S INTRODUCTION

This action arises from an incident wherein Defendant Tara Coronel's good intentions turned into a lawsuit. Tara Coronel was employed with Riverside County in 2020 and, after training, she began her duties in the investigating unit with Children Services. While on her own time, alone, at home, Defendant Coronel searched her sister's boyfriend, Warren Paul's name in the CWS system with his permission. In that search Defendant Coronel only read interactions that Warren had with Social Workers. Years prior, Warren Paul's biological son "A.F." was adopted through Riverside County as a minor. Defendant Coronel had previously been given updates about A.F. through her sister, Tamara Coronel, and Warren Paul. Defendants Coronel, and Paul used updates provided from social media and maternal side to follow A.F.'s growth throughout the years. Defendant Tara Coronel contacted A.F.'s who was an adult at the time, water polo team's Instagram and left contact information. Defendant Coronel was then contacted by all three Plaintiffs' which resulted in this lawsuit, with Defendant Tara Coronel Pro Se in Federal Court.

---

defendants are similarly situated to Defendant Coronel or have closely related defenses among them, the Ninth Circuit prohibits default judgment when liability remains pending against remaining defendants not in default. *See Garamendi v. Henin*, 683 F.3d 1069, 1083 (9th Cir. 2012). As such, Plaintiffs seek summary judgment as to liability against each of the Individual Defendants as a precautionary measure to protect against inconsistent or incomplete judgment. Notwithstanding the inclusion of the defaulting defendants herein, defaulting defendants are not entitled to appear in this action in any way, and they are precluded from adducing evidence or being heard at a final hearing. *See Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 995, 1006 (N.D. Cal. 2001).

## II.   STATEMENT OF FACTS

### A. PLAINTIFFS' STATEMENT OF FACTS

A.F.'s biological mother was a drug addict and in and out of prison. (JAF, No. 1, Felix Decl., ¶ 5.)  As a result, A.F. was neglected and, thus, became a ward of the state at the age of 5.  (JAF, No. 1, Felix Decl. ¶ 5.) A.F.'s biological father (Defendant Warren Paul) was absent and despite repeated notices regarding A.F.'s status in foster care, he never claimed A.F. or accepted responsibility. (JAF No. 5, Felix Decl., ¶ 9, 14; Stuart Depo, 19:1-18.) Between the ages of 5 and 10, A.F. lived in seven different foster homes. (JAF No. 2, Felix Decl., ¶ 6.) A.F. was finally adopted by Plaintiffs Stuart and Felix when he was ten years old in December 2012. (JAF No. 7, Felix Decl., ¶ 19; Felix Depo, 16:9-12.) At the time of his adoption, A.F. suffered from severe learning disabilities, emotional trauma, and psychological injuries from his history of neglect, abandonment, and rejection.  (JAF No. 4, Felix Decl., ¶ 4, 7.) In fact, at the time of placement with Plaintiffs Stuart and Felix, A.F. was effectively illiterate. (JAF No. 4, Felix Decl., ¶ 7, Felix Depo, 54:5-56:1.)

For several years after his adoption including up to today, A.F. and his parents continue to struggle with the negative and long-lasting repercussions of A.F.'s formative years in foster care. (JAF No. 4, 10; Felix Decl., ¶ 7-8, A.F. Depo, 21:22-22:5, 22:21-23:3) Over the years, there have been significant milestones and achievements, such as graduation from high school, notable achievements as a water polo athlete, and, most recently, a Division I scholarship to play water polo for UC Irvine. (JAF No. 12, Stuart Depo, 77:14-77:18.) However, there were bouts of regression as A.F. continued to struggle with his emotional health related to ongoing depression, anxiety, and lack of self-confidence, particularly related to feelings of abandonment and rejection from his biological parents. (JAF No. 11, A.F. depo 21:22-22:5; 22:21-23:3.) These emotional struggles were exacerbated by Defendants'

actions. (JAF No. 27, A.F. Depo, 39:11-40:3; 41:16-42:16; 68:11-69:18; 71:19-73:3;
73:23-74:21; 83:18-84:12.)

On June 11, 2021, Defendant Coronel shattered the significant progress that
Plaintiffs had worked for years to enable A.F. to enjoy the benefits of a strong family
bond—stability, security, and protection—benefits that he had been missing for so
many years.  On June 11, 2021, a few hours after Defendant Coronel unlawfully
accessed Plaintiffs' information in the County's CWS/CMS system, (JAF No. 18,
COUNTY-001444, Trace Audit Results.), Defendant Coronel reached out to A.F.'s
water polo club via an Instagram direct message. (JAF No. 19, Coronel Depo, Ex.
2.) In this message, Defendant Coronel unlawfully disclosed the fact that A.F. was
adopted, disclosed his confidential birth name, and falsely claimed that his biological
father had been looking for A.F. "for years." *Id.* In addition, Defendant Coronel
sought contact information for A.F. *Id.* The representative from the water polo club
immediately denied her request and informed Plaintiffs regarding Defendant
Coronel's outreach. (JAF No. 20, PLFS000139, Water Polo Email, Felix Depo,
36:16-37:1.)

As a family, Plaintiffs Stuart and Felix experienced significant anxiety
regarding the outreach by Defendant Coronel and the potential negative impact that
such contact would have on A.F. and the progress that they had made to date. (JAF
No. 21, Felix Depo, 39:3-41:1; 42:5-14.)  A.F. struggled for five days with the
decision to make contact with his biological father's "representative," and because
he wanted answers from his biological father, he agreed to make the call. (JAF, No.
21. Felix Depo, 42:20-43:23; 57:15-24; A.F. Depo, 33:14-25; 36:7-19; 37:3 –38:8;
Stuart Depo, 25:09-25:22.)

On June 18, 2021, the Plaintiffs made a call from Plaintiff Felix's cell phone
from a blocked number and A.F. requested to speak to his biological father.

Defendant Warren Paul, and he reiterated that he only wanted to speak to Defendant Paul. (JAF No. 22 Felix Depo 45:23-48:23; A.F. depo 37:7-38:8.)   Defendant Coronel stated that Defendant Paul was "at work" and unavailable but that she would arrange for Defendant Paul to be available the next day at 10:00 am. (JAF, No. 22 Felix Depo 47:8-20; A.F. Depo 44:11-17.)

The next day on June 19, 2021, at 10:00 am, Plaintiffs called Defendant Coronel again to speak to Defendant Paul, as arranged the day before, but Defendant Paul was not on the call. (JAF, No. 23. A.F. Depo, 40:20-23.) Instead, Defendant Tamara Coronel, Defendant Coronel's sister and purported "wife" of Defendant Paul, answered the phone. (JAF No. 23, A.F. Depo, 41:8-12.) Once it was clear that Defendant Paul was not going to participate in the call, or that he reportedly did not even know about the call, Plaintiffs questioned Defendants' intentions and the call quickly deteriorated (JAF No. 24, A.F. Depo, 41:13-49:18.) Defendant Coronel and Defendant Tamara Coronel screamed at Plaintiffs for "getting involved" in A.F.'s business because he "was over 18" and hung up on them. (JAF No. 26, A.F. Depo, 47:13-49:18.)

Before the June 19, 2021, call ended, Plaintiffs asked Defendant Coronel how they identified A.F. given that his adoption was a closed adoption, his information confidential, and his birth name and information was changed upon adoption. (JAF No. 25, Felix Depo, 51:20-53:6.) At first, Defendant Coronel indicated that Defendants had hired a private investigator. (*Id;* JAF No. 25, PLFS000143, Stuart Phone Call Notes.) Next, Defendant Coronel changed her story and claimed Defendants found A.F. on Facebook. *Id.* When Plaintiffs continued to express skepticism and question Defendant Coronel's ability to obtain confidential information, she claimed that she "looked at adoption paperwork." *Id.*

5

Still skeptical about Defendant Coronel's story, Plaintiff Stuart researched Defendant Coronel shortly after their telephone conversation. During this research, Plaintiff Stuart discovered that Defendant Coronel worked as a social worker at Defendant County of Riverside. (JAF No. 28, Stuart Depo, 38:9-39:5, COUNTY-001511 Concerns with Tara Email Chain.) Plaintiff Stuart contacted Defendant County and spoke to Defendant Coronel's supervisor and requested an investigation. (JAF No. 28, Stuart Depo, 40:4-41:13.) Thereafter, an investigation was purportedly conducted and Plaintiffs subsequently each received a "Notice of Breach," dated September 14, 2021, from Defendant County, which confirmed that their "closed adoption record was accessed by one staff member." (JAF No. 31, COUNTY-001786-001791 Notice of Data Breach Letters.) Further, these notices for Plaintiffs Stuart and Thomas indicated that "DPSS has investigated the incident and determined that your first and last name, address at the time of placement, and birth date were accessed without authorization." (JAF No. 31, COUNTY-001786-001789 Notice of Data Breach Letters, Stuart and Felix.) For Plaintiff A.F., the Notice confirmed the following additional information was accessed: social security number and health information at the time of placement. (JAF No. 31, COUNTY-001790-001791 Notice of Data Breach Letter, A.F.) Finally, the notices also indicated "We are unsure if your information has been misused in any way other than in an attempt to contact you." *Id.* Other than advising Plaintiffs to "remain vigilant to the possibility of fraud and identity theft by reviewing credit reports and bank and other financial statements for any unauthorized activity," Defendant County provided no further information or assistance to the Plaintiffs. Defendant Coronel resigned before she could be interviewed by the County. (JAF No. 29, 30; Roselli Depo. Ex. 14, Ex. 18.)

## B. DEFENDANT CORONEL'S STATEMENT OF FACTS

Defendant Tara Coronel was an employee with Riverside County as Social Worker in the investigation unit with Children Services at the time of the incident. Plaintiff A.F., age 21, is a former dependent of the County of Riverside who was adopted as child by Plaintiffs Thomas Stuart and Jose Felix. Defendant Tara Coronel's sister, Tamara Coronel, has been in a long-term relationship with A.F.'s biological father, Warren Paul, for almost 19 years. Warren was not given an opportunity to be present in A.F.'s life due to A.F.'s bio mother having addiction issues and telling Warren several times she was not sure if he was A.F.'s father. Warren gave Tara permission during a conversation to search his name in CWS system as he always had mistrust in the system. While off duty, at home, Defendant Tara Coronel searched Warren's name which showed short interactions social workers had with Warren during an investigation. Defendant Coronel only worked in the investigation unit and had very little knowledge of other units, including adoption. Defendant Coronel did not know how to navigate information in adoptions because she did not work in that unit, the only information read was about Warren. No information was shared with Tamara or Warren.

During the past 19 years, prior to Defendant Tara Coronel's employment as a Social Worker, Warren spoke openly about his biological son A.F. and proudly shared updates he was given. Throughout the years Warren and Tamara shared their desire to reunite with A.F. once he turned 18 years old.  Defendants depended on updates from maternal side of A.F. and public social media postings to learn more about A.F. throughout the years. In November of 2020, Warren and Tamara had their first child together. With A.F. turning of age and

7

the birth of their child and wanting him to meet his only biological sibling, reaching out was something spoke about more.

In June of 2021, Defendant Tara Coronel with good intentions contacted A.F.'s water polo club via social media. Although Defendant Coronel was unsure if that was A.F. in the picture, she asked to be put in contact with A.F. The club provided Coronel's contact information to A.F.'s parents, and Felix, Stuart and A.F. and the Plaintiffs' called Defendant Tara Coronel on or about June 18, 2021. Plaintiffs stated they agreed and discussed as a family to decide to contact Defendant. In fact, this isn't the first time Plaintiff's decided on their own to call the biological parent of A.F. As A.F. stated in his deposition (JAF Depo A.F. pg. 21:13-25 and pg.22:1-24) that his parents put him in contact with his birth mother 4-5 years ago. The same mother that he was removed from due to having addiction issues and was involved in a "closed" adoption. Which made Defendants believe that A.F. also had the same desire to speak with his biological father.

During the first phone call with the Plaintiffs, which lasted 5-10 minutes, Defendant Coronel immediately thanked the Plaintiffs for the great work they had done with A.F. Please see deposition ( JAF Depo Stuart PG 26:17-25) where Plaintiff Thomas Stuart stated.
"She was very nice. She, you know, said that she had seen postings about A.F. and that like she was proud of his accomplishments, and she knew that Louie and I were a big part of that, and you know, thanked us for taking good care of him."

8

During the phone call, A.F. showed great interest in getting information about his biological father, and Defendant Tara agreed to share the best of her knowledge, and only answered questions that were asked. Once she stated that Warren had always wanted him, one of the fathers seemed to be triggered and began yelling "He never wanted him" in the background. Plaintiffs then decided on their own and requested to call back the next day to speak with Warren.

Defendant Tara spoke with Tamara about the phone call and due to the father's outbursts, it was decided in an attempt to avoid conflict not to tell Warren about the call at that time.

On or about June 19, 2021, Plaintiffs made the decision and called Coronel again and spoke to both Defendants. Defendant Tara and Tamara Coronel notified A.F. that Warren Paul was not there. Before Defendant Coronel's could explain the reason the Plaintiffs Stuart and Felix became irate and began yelling in the background while A.F. remained calm and continued to ask questions about his father. Defendant Coronel ended the call due to the nature of the call. The same reason why the call was ended and the only reason why Warren was not notified; was due to the Defendant Felix and Stuart's toxic behavior, knowing their son A.F. desperately wanted answers, and to avoid conflict.

Defendant Stuart and Felix claim that the call caused issues between the family. However, Plaintiff Felix stated in his deposition (JAF Depo FELIX pg. 61:21-25 and pg. 62:1-5) when asked if A.F. said why he was angry at you? And answered "Because things escalated. And he felt like - he wanted

9

answers to questions, and he felt like he didn't have, like, a good enough

opportunity to get those answers. So, he was kind of blaming us and had anger

and resentment toward us that seemed to build as time went by. Because in his

head, he felt like - well, I don't think. In his head, he felt like this was his

opportunity to finally get answers."

Defendant Coronel clearly did not conspire to hurt anyone, especially the

biological child of Warren. Defendants were simply trying to avoid conflict

after being verbally attacked from the Plaintiffs Felix and Stuart. Tamara

Coronel's only involvement in the case was listening to Warren Paul's proud

updates he was provided throughout the years about A.F. and taking a phone

call from the Plaintiffs. Warren did not even participate in the phone call, just

suggested in a conversation to look his name up but was never provided

details as there was very little interaction with him and the county but is still

be named in this lawsuit.  Plaintiffs gave up their privacy rights when they

decided on their own, as a family, as three adults to make the call not

knowing the outcome, just as they contacted A.F.'S mother years earlier. The

only thing that conspired at the time was to let A.F. know he was always

thought of and loved, that will always remain the truth no matter the outcome

of this lawsuit.

## III.   LEGAL STANDARD

### A. PLAINTIFFS' STATEMENT OF LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any

material fact and . . . the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c). The party seeking summary judgment must inform the court

of the basis for its motion, and the burden then shifts to the non-moving party to

demonstrate why summary judgment would be inappropriate. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But the nonmoving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986); *see also Matsushita*, 475 U.S. at 586-87 ("opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

In addition, Rule 56(d)(2) specifically provides that "interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue as to the amount of damages." Fed. R. Civ. P. 56(d)(2). This is a frequent application of the partial summary judgment procedure. *Pacific Fruit Express Co. v. Akron, Canton & Youngstown Railroad Co.*, 524 F.2d 1025 (9th Cir. 1975).

For the reasons that follow, Plaintiffs are entitled to judgment as a matter of law against Defendant Coronel (and Defendants Tamara Coronel and Warren Paul) on each of their claims.

## B. DEFENDANT'S STATEMENT OF LEGAL STANDARD

Summary Judgement is not appropriate, as Defendant, Tara Coronel, argues that the summary of judgment as interpreted by the Plaintiff lacks validity in this case. Summary judgment under Fed. R. Civ. P. rules, according to FRCP 56(c), are warranted if there are no genuine issues concerning material facts, and a moving party must be legally entitled to judgment. Nevertheless, the major facts crucial for comprehending the motive behind the actions, as well as their outcomes, are highly contested in this case. While the Plaintiffs paint a picture pointing directly at culpable individuals and damages, it fails to consider how complicated human life is, especially when attempting family reunions. The intention manifested in actions, the kind of data allegedly retrieved or obtained, and the extent of the injury caused

11

both to A.F. himself and his adoptive parents are more complex than the Plaintiffs presume it is. These issues include both subjective interpretations and emotive undertones that must be fully tried to measure properly. Additionally, in this particular dispute involving family members over employment-related issues and questionable motives behind the policy violations, a more detailed evidence should be carried out even in a case of possible interlocutory summary judgment decisions on liability. Thus, such a judgment that would rule out deep investigation into the crucial factual issues pertaining to this dispute may not be suitable for this case.

## IV.   ANALYSIS

### A. PLAINTIFFS' ARGUMENT 1

**1. Summary Judgment Should be Granted on Plaintiffs' First Cause of Action Against Defendant Coronel Brought Under 42 U.S.C. § 1983 for Violation of Plaintiffs' Substantive Due Process and Familial Relationship Rights.**

To sustain an action under Section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right. *Balistreti v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

#### a.    Defendant Coronel was acting under color of state law when she engaged in the complained of conduct.

"It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citations omitted).

It is undisputable that Defendant Coronel was authorized by the County, and expected as part of her official duties, to access the CMS/CWS database. (JAF No.

16, Coronel Depo, 162:19-23.) While acting under the pretense of performing her official duties, she accessed the County/State database, using County computer equipment, a County-issued system logon, and one or more County-issued passwords. (JAF No. 18, Coronel Depo, 58:1-59:3; 60:18-61:1; 149:23-150:7.) In fact, Defendant Coronel's undisputed access to Plaintiffs' confidential records occurred during her remote duty hours. (JAF, No. 19, Coronel Depo 35:23-25.) But for Defendant Coronel's status as a County employee, she would not have been able to access the Plaintiffs' information; thus, she invoked the powers of her office to accomplish the offensive act. However improper Defendant Coronel's actions were, they clearly related to the performance of her official duties. *See McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) (holding employee "acted under the pretense of state employment by asserting her state authorized passcode to enter into the database") (citations omitted); *see also Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 480 (9th Cir. 1991) ("For conduct to relate to state authority, it must bear some similarity to the nature of the powers and duties assigned . . . ."); *Doe v. San Diego*, 445 F. Supp. 3d 957, 967 (S.D. Cal. 2020) (finding deputy sheriff accessed plaintiff's information "by virtue of his position" as a deputy and thus, acted under color of state law).

> **b.   Defendant Coronel's conduct deprived Plaintiffs of their Constitutional right to familial association.**

The right to family integrity has long-been recognized as a fundamental liberty interest protected by the Fourteenth Amendment. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (stating "heightened protection against government interference with certain fundamental rights and liberty interests"); *Lehr v. Robertson*, 463 U.S. 248, 256 (1983) (discussing right of children in familial association); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (discussing right of

parent in familial association); *Patel v. Searles*, 305 F.3d 130, 136 (2d Cir. 2002) (explaining that the direct familial relationship such as parent and child deserve the greatest degree of protection because they are among the most intimate of relationships).

To amount to a substantive due process violation under the Fourteenth Amendment, the harmful conduct must "shock []the conscience or offend the community's sense of fair play and decency." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (citations omitted); *see also Griffin v. Strong*, 983 F.2d 1544, 1549 & n.5 (10th Cir. 1993) (holding that police officer's lie to suspect's wife that her husband had confessed to child abuse "weighs on the side of infringement"). Conduct that shocks the conscience includes a defendant's acts undertaken with "deliberate indifference" or a "purpose to harm." *Estate of Neil v. Cty. Of Colusa*, No. 2:19-cv-02441-TLN-DB, 2022 WL 4291745, at *7 (E.D. Cal. Sept. 9, 2020).

Defendant Coronel's conduct deprived Plaintiffs of their constitutional right. Defendant Coronel was employed by the County of Riverside as a Social Service Practitioner III or a "social worker." (JAF No. 14, Coronel Depo, 22:6-10.) Her duties and responsibilities included conducting "front-end investigations" of child abuse or neglect through referrals or emergency response referrals through the County's 24/7 hotline. (JAF No. 15, Coronel Depo, 26:17-28:3.) In fact, Defendant Coronel's own resume claims that she specializes in "complex trauma … [,] mental health crisis" and "[f]oundational casework and training trauma focused-cognitive behavioral and family systems therapy[]" and that she is "[h]ighly trusted and well-regarded by peers, bringing the utmost professionalism to every client interaction." (JAF No. 17, Coronel Depo. Ex.3, Resume)

As someone who was ostensibly trained and hired to assist in protecting the health and welfare of children and their families, it is nothing but conscience-

shocking for Defendant Coronel to have used and abused her position of power and false pretense to cause emotional pain and trauma to a teenager who was part of the child welfare system for several years and interfere with the sanctity of the Plaintiffs' familial privacy. Defendant Coronel's intentional misuse of her authority and access and subsequent lies as to her access, identity, and motive was conscious and deliberate, at best; was deliberately indifferent to the inevitable harm that would be suffered by a teenager who was contacted by a father (or his purported representative) who had abandoned him for his entire childhood; or was intentionally done with the purpose to harm Plaintiffs Stuart and Felix because they are gay parents who adopted A.F. (JAF, No. 32, Coronel Text Messages.) *Estate of Neil*, 2022 U.S. Dist. LEXIS 167659, *21 (conduct that shocks the conscience includes defendant's acts with "deliberate indifference" or a "purpose to harm.")

Plaintiff A.F. was formally adopted when he was ten years of age. (JAF No. 7, Felix Decl. ¶ 19, Felix Depo, 16:9-12.) For the majority of his adolescent years and up to the age of ten, A.F. was bounced around among numerous foster homes, never had the stability, protection or love of a permanent family or home, and suffered repeated episodes of abandonment, rejection, and worthlessness. (JAF No. 2, 4; Felix Decl., ¶ 6-8, 21; Felix Depo, 54:4-56:1.) After he was adopted into his family, Plaintiffs Stuart and Felix dedicated themselves to providing A.F. (and his brother) with love, affection, and stability. (JAF No. 9, Felix Decl., ¶ 9, 20, 25.) Notably, although A.F. was ten years old at the time of adoption, he was effectively illiterate. (JAF No. 4, Felix Decl., ¶ 7.) It is not surprising that a ten-year old boy, who spent the majority of his childhood in the child welfare system, suffered from emotional instability and developmental delays. Notwithstanding the significant obstacles in their way, Plaintiffs Stuart and Felix committed to providing A.F. the emotional and financial support necessary to address his educational/developmental

deficiencies and emotional pain. (JAF, No. 9 Felix Decl. ¶ 8.) Most importantly, they constantly worked to provide A.F. with the familial stability and protection that A.F. had been missing for so many years. (JAF, No. 9 Felix Decl. ¶ 8, 25.) A.F.'s sense of abandonment was palpable and real, particularly given the absence of any male father figure coming forward to claim or save him during the five years that he was stuck in the County welfare system. (JAF, No. 11. A.F. Depo, 21:22-22:5, 22:21-23:3.)

After adoption, A.F. himself did everything he could to start a new life with his brother and experience the stability of a permanent home with two loving parents. With the closed adoption, A.F.'s name was changed, his social security number was changed, and even his adopted parents are now listed as his parents on his birth certificate. (JAF No. 8, Stuart Depo, 66:3-7.) A.F. intentionally rejected any reference to his painful past, including his birth name, and sought to begin his life fully, completely, and historically as Plaintiffs Stuart and Felix's son. (JAF No. 8, A.F. Depo, 83:18-84:12.)

On June 11, 2021, Defendant Coronel shattered everything that A.F. and his parents had painstakingly built, nurtured, and protected. Defendant Coronel invaded the sanctity of Plaintiffs' lives and egregiously violated their family's privacy by using the confidential information she obtained through County systems to reach out to a third-party water polo club affiliated with A.F. This club had no information whatsoever regarding A.F.'s birth name or details regarding his adoption, until Defendant Coronel contacted them and disclosed this information. Further, Defendant Coronel then proceeded to request further contact on behalf of A.F.'s absentee biological father, under false pretenses and abusive motives by disclosing A.F.'s birth name, lying about her relationship with A.F.'s birth father as her "brother in law," and intentionally inflicting further harm and injury by

misrepresenting that A.F.'s "birth father" had been searching for him for years. (JAF No. 19, Coronel Depo, Ex. 2, Water Polo DM.) This outreach by Defendant Coronel—a purported representative of A.F.'s biological father—caused further harm once contact was made per her request. The gateway to intrude into the Plaintiffs' private life was based on Defendant Coronel's unlawful access to Plaintiffs' confidential information with the intention and/or purpose to interfere with the most intimate and protected familial relationship.

Although not required for purposes of summary judgment, Defendant Coronel's actions placed a significant, if not permanent, crack in the parental trust and familial bond that Plaintiffs had worked so hard to establish. *Roberts v. Jaycees,* 468 U.S. 609, 619-20 (1984) (constitutional protections for associational interests are at their apogee when close family relationships are at issue.) For example, Plaintiff Felix testified regarding the suffering, pain, and distrust that Defendant Coronel's interference has caused their relationship with A.F. (JAF No. 27, A.F. Depo, 50:18-55:18, Felix Depo, 61:16-62:23, 98:7-18; Stuart Depo, 65:3-66:22, 76:18-23; Felix Decl. ¶ 22-31.)

Additionally, Plaintiff Stuart testified regarding the anxiety, depression, frustration, fear, and invasion of privacy he suffered as a result of Defendant Coronel's interference with their private family unit.  (JAF No. 27, Stuart Depo, 65:3- 66:22.) Both Plaintiffs felt that they failed as parents and caused damage to the fragile trust that they had built to prove to A.F. that they would protect him. (JAF No. 27, Stuart Depo, 76:18-23.)

There can be no genuine dispute of material fact that Defendant Coronel was acting under color of state law when she used her County-provided credentials to access confidential, closed adoption records in the CMS/CWS database, used and/or disseminated the confidential information she obtained solely because of her

employment, and acted under false pretense to invade Plaintiffs' fundamental right to family integrity by way of uninvited contact, thereby violating Plaintiffs' constitutional rights. In light of the foregoing, Plaintiffs are entitled to summary judgment on their First Cause of Action for violation of Plaintiffs' Fourteenth Amendment rights.

## B. DEFENDANT'S ARGUMENT 1

Although the allegations state that Defendant Coronel accessed the CMS/CWS database it was for personal use. "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 49 (1988)

Defendant Coronel conducted without the malicious intent necessary to constitute a violation of Plaintiffs' substantive due process and familial relationship rights. Although Defendant was employed with Riverside County as Social Worker, Defendant Coronel was not assigned the Plaintiff's case, and did not introduce herself as a County employee or act as a Social Worker during their interaction. The threshold for a substantive due 4 process violation under the Fourteenth Amendment involves conduct that "shocks the conscience," as established in cases like Rosenbaum v. Washoe County. However, Defendant Coronel's actions, rooted in facilitating familial connections, have yet to rise to this level.  There is still a question as to how the family connection has been tarnished, and it previously stated from the Defendant's they continue to have a bond and live together. Defendant's Coronel's has spent years serving her community, the intent was not to disrupt or harm the familial bond of A.F. with his adoptive parents but to provide a choice to have the Plaintiff's make their own decision for closure and

18

answers to lingering questions about A.F.'s biological family, especially his
biological father, who expressed a longstanding desire to reconnect.  The
arguments stated in the history of mental health issues that A.F. has allegedly
suffered cannot be used as a fact to this case for a summary judgement, as stated
previously in the Plaintiff's statement of facts, his issues come from the neglect he
experienced from the person that raised him, his mother.  The facts at hand present
a significant dispute regarding the nature and impact of the actions, warranting a
full trial rather than a summary judgment.

## C. PLAINTIFFS' ARGUMENT 2

**1.  Summary Judgment Should be Granted on Plaintiffs' Second Cause of
Action Against Defendant Coronel Brought Under 42 U.S.C. § 1983 for
Violation of Plaintiffs' First Amendment and Familial Relationship
Rights.**

The First Amendment also protects "family relationships, that presuppose
'deep attachments and commitments to the necessarily few other individuals with
whom one shares not only a special community of thoughts, experiences, and beliefs
but also distinctively personal aspects of one's life.'" *Lee v. City of Los Angeles*, 250
F.3d 668, 685 (9th Cir. 2001) (quoting *Board of Dirs. of Rotary Club v. Rotary Club
of Duarte*, 481 U.S. 537, 545 (1987)).  The First Amendment right to familial
association protects intimate relations "from unwarranted state interference" and is
necessary to safeguard "the ability independently to define one's identity that is
central to any concept of liberty." *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir.
2018) (quoting *Roberts*, 468 U.S. at 619 (1984)).  Moreover, it is well-established
that the parent-child relationship is the most intimate on the "spectrum" of
relationships and, thus, entitled to the most protection. *Board of Dirs. of Rotary Int'l.*

481 U.S. at 545-546 (1987) (cleaned up). In sum, there is rarely a relationship more personal or private than the parent-child relationship.

Similar to the arguments above under the Fourteenth Amendment, Defendant Coronel violated Plaintiffs' First Amendment rights by interfering with their most private and sacred decisions to independently define their identity about their family. *See Nguyen v. Kaiser Foundation Health Plan, Inc.*, No. SA CV 17-0905-PSG (DFM), 2018 WL 6131949, at *23 (C.D. Cal. July 27, 2018) (citing *Castillo v. Cty. of Los Angeles*, No. 14-07702, 2015 WL 13639579, at *11 (C.D. Cal. Apr. 17, 2015)) (courts have assessed First Amendment claims by referencing the standards applicable to other associational freedoms, including those provided under the Fourteenth Amendment). First, Plaintiff A.F. never requested to be reconnected with his biological father, let alone any of his friends or family. Second, Plaintiff Stuart and Felix intentionally prohibited Plaintiff A.F.'s biological family the ability to unilaterally find or contact A.F. by choosing a closed—rather than open—adoption. As a family, they left the decision for A.F. to make contact with his biological parents *if*, and when, he ever decided to do so. (JAF No. 10, COUNTY-001502, Concerns with Tara Email Chain.) Nevertheless, Defendant Coronel unlawfully interfered with Plaintiffs' highly personal and private decisions to protect themselves against A.F.'s painful childhood and to prohibit access by the very people who abandoned and rejected A.F. multiple times as a young child.

There is no excusable basis for Defendant Coronel's actions and there is no question that the very integrity of the Plaintiffs' family unit was completely upended by her actions. In fact, Plaintiffs felt guilt for failing to protect their child and placing him in yet another position of abandonment and pain regarding his biological father; and A.F.'s feelings of abandonment and anger were exacerbated. (JAF No. 27, Felix Depo, 61:16-62:23; A.F. Depo, 50:18- 55:18.) Plaintiffs have unequivocally testified

regarding the significant and substantial impact that Defendants' interference has caused their family dynamic. (JAF, No. 27, Felix Depo, 61:16-62:5; Stuart Depo, 76:18-23; A.F. Depo, 50:18-55:18, 71:19-74:21.) While Defendant Coronel may dismiss and minimize the interference and constitutional violation that Plaintiffs suffered, there is no recognized threshold requirement. *See Barba v. City of Shafter*, 1:12-v-00195, 2015 U.S. Dist. LEXIS 23515, at *29 (E.D. Cal. Feb. 26, 2015) (death is not a prerequisite for a familial association cause of action); *see also Patel*, 305 F.3d at 137 (rejecting defendants' "draconian and formalistic vision of how severe the impairment to the right to intimate association must be because, for one thing, it is not supported by the case law.")

For these reasons, Plaintiffs are entitled to summary judgment on their Second Cause of Action against Defendant Coronel for violation of Plaintiffs' First Amendment rights.

## D. DEFENDANT'S ARGUMENT 2

In response to Plaintiffs' Second Cause of Action under 42 U.S.C. § 1983 for alleged violation of First Amendment and familial relationship rights, as Defendant Tara Coronel, had no plans to ever interfere with the Plaintiff's family nor disrupt the relationship but to perhaps reunite A.F. with his father. However, this act was not aimed at changing or meddling in the personal identity of the Plaintiffs; instead, it intended to allow an adult who was adopted as child to make a choice to contact his biological father and family. It was stated in A.F.'s deposition (JAF Depo A.F. pg. 21:13-25 and pg.22:1-24) that he was given the opportunity to speak to his biological mother and her family, that interaction was no different than with his biological father's family.   A.F. was an adult at the time of this incident and after discussion they chose to call the defendant. Defendant Coronel did not go to their home or call their phone, simply left a message allowing them to make their own

decision in making contact. It does not amount to a material and flagrant invasion of the Plaintiff's First Amendment rights justifying summary judgment. This being so, there has to be a sophisticated analysis that will surpass a summary judgment.

## E. PLAINTIFFS' ARGUMENT 3

**1. Summary Judgment Should be Granted on Plaintiffs' Fifth Cause of Action Against the Individual Defendants Brought Under the California Constitution Article I, § 1 for Violation of Plaintiffs' Right to Privacy.**

Article I, section 1 of the California Constitution establishes privacy as an inalienable right, and protects against invasions of privacy by government and private actors alike.[2] The California Constitution sets similar standards with regard to the right to privacy as the common law tort of intrusion and requires three elements to be met:

> First, [the plaintiff] must possess a legally protected privacy interest . . .
>
> Second, the plaintiff's expectations of privacy must be reasonable . . .
>
> Third, the plaintiff must show that the intrusion is so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

*Hernandez v. Hillsides*, 47 Cal. 4th 272, 287 (2009) (internal citations and quotations removed). These three "elements" do not themselves impose an onerous burden, but serve instead as "threshold elements" that "weed out claims that involve so

---

[2] Article I, section 1 states in pertinent part: "[a]ll people are by nature free and independent and have inalienable rights. Among these are . . . pursuing and obtaining . . . privacy." In *Hill v. NCAA*, 7 Cal. 4th 1, 20 (1994) the Supreme Court held that "the Privacy Initiative in article I, section 1 of the California Constitution creates a right of action against private as well as government entities."

insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant." *Leonel v. Am. Airlines*, 400 F.3d 702, 712 (9th Cir. 2005) (quoting *Loder v. City of Glendale*, 14 Cal. 4th 846 (1997)); *accord Norman-Bloodsaw v. Lawrence Berkeley Lab*, 135 F.3d 1260, 1271 (9th Cir. 1998).

A defendant may prevail by negating one of the three elements, or by pleading and proving an affirmative defense that the invasion of privacy is justified by "countervailing interests" which the plaintiff may rebut by showing feasible and effective alternatives. *Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1119-20 (2006).

The first element, easily satisfied here, is a question of law. *See id.* at 1119. "Legally recognized privacy interests include interests in precluding the dissemination or misuse of sensitive and confidential information." *County of Los Angeles v. Los Angeles County Employee Relations Com.*, 56 Cal. 4th 905, 927 (2013); *see also Porten v. University of San Francisco*, 64 Cal. App. 3d 828, 832 (1976) ("prima facie violation of the state constitutional right of privacy" based on "the improper use of information properly obtained for a specific purpose"). The County adoption records, to which Defendant Coronel accessed and the Individual Defendants misused, as described *supra* Sections IV.A and IV.C, contain sensitive and confidential information, which confidentiality is protected and dissemination is governed by statute. *See, e.g.*, Cal. Fam. Code § 9200 *et seq.*; Cal. Civ. Code § 1798.24.

In determining whether Plaintiffs have met the second element, this Court must examine whether Plaintiffs' expectation is "objectively reasonable under the circumstances," in light of the "competing social interests involved" and "widely accepted community norms." *Hill*, 7 Cal. 4th at 26-27; 37. In such an examination,

this Court is to consider "customs, practices, and physical settings surrounding particular activities that may create or inhibit reasonable expectations of privacy." *See id.* at 36, 42 (finding diminished expectation of privacy for athletes because they choose to participate in voluntary extracurricular activity and that "[a]s a result of its unique set of demands, athletic participation carries with it social norms that effectively dimmish the athlete's reasonable expectation of privacy).

Here, Plaintiffs' expectation of privacy is objectively reasonable. First, California is a closed adoption state and, thus, adoption records are not public unless a petition for good cause is granted by the California state court where the adoption occurred under California Family Code 9200 *et seq.* Unlike *Hill,* participation in the adoption process, and the concomitant submission of confidential information and record keeping, does not and cannot diminish any expectation of privacy. The only way to avoid submission of confidential information would have been to forgo adoption altogether; this is not a meaningful choice. *See Oregon Prescription Drug Monitoring Program v. U.S. Drug Enforcement Admin.* 998 F. Supp. 2d 957, 967 (D. Or. 2014), rev'd. on other grounds (9th Cir. 2017) 860 F.3d 1228. Second, Plaintiffs' expectation of privacy, and the right to be free from unwanted communication, is heightened as it invaded the sanctity of their home. *See Los Angeles County Employee Relations Com.*, 56 Cal. 4th at 926 (concluding home contact information is generally considered private because of the strong interest in avoiding unwanted communication, particularly in the home); *Planned Parenthood Golden Gate v. Superior Court*, 83 Cal. App. 4th 347, 359 (2000) ("Courts have frequently recognized that individuals have a substantial interest in the privacy of their home.").

In analyzing the "offensiveness" of the intrusion, courts examine the surrounding circumstances, including the "degree and setting" of the intrusion and

24

"the intruder's 'motives and objectives,'" and whether the defendant "could have minimized the privacy intrusion through other reasonably available, less intrusive means." *Hernandez*, 47 Cal. 4th at 295 (internal quotations and citations removed). The Individual Defendants did not accidentally stumble into Plaintiffs' zone of privacy. *Cf. id*, at 272 ("[N]o cause of action will lie for accidental, misguided, or excusable acts of overstepping upon legitimate privacy rights."). Instead, Defendant Coronel deliberately accessed Plaintiffs' closed confidential records without Plaintiffs' permission and collaborated with her co-defendants to make contact with Plaintiffs. (JAF, No. 17, Coronel Depo, 33:9-40:20; 46:6-47:3.) This conduct is so serious and offensive that the California legislature subjects the perpetrator to criminal liability under California Penal Code § 502. Faced with the foregoing, no reasonable jury could find that the invasion was not an egregious breach of social norms. *See Mintz v. Bartelstein and Assoc. Inc.*, 906 F. Supp. 2d 1017, 1034 (2012) (finding serious invasion of privacy interest where defendant's conduct would subject him to liability under California Penal Code section 502.)

The Individual Defendants cannot negate Plaintiffs' proof of the foregoing elements, nor can they articulate any legitimate interest in misusing and disclosing confidential information from closed adoption records. *See Lewis v. Super. Ct.*, 4 Cal. 5th 561, 573 (2017) (quoting *Hill*, 7 Cal. 4th at 38) ("Invasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest"). "Legitimate interests derive from the legally authorized and socially beneficial activities of government and private entities." *Id*. Defendant Coronel's dissemination and the Individual Defendants' collective misuse of information contained in closed adoption records was not legally authorized and therefore not derived from a legitimate interest. For these reasons, the balance weighs decisively in favor of Plaintiffs.

25

Therefore, the Court should grant Plaintiff summary judgment in their favor against the Individual Defendants on the third cause of acti state constitutional invasion of privacy claim.

## F. DEFENDANT'S ARGUMENT 3

In response to Plaintiffs' Third Cause of Action under the California Constitution Article I, § 1, I, Defendant Tara Coronel's action was not done with the intent to invade the Plaintiff's privacy nor cause harm. Despite being an integral, non-delegable right, there is a need for a balance between the right and the contextual considerations in various cases. This time, it is a procedural impropriety but not a severe or extensive intrusion that could be seen as a gross perversion of social practice. There was no abuse in gathering this information, unlike what occurs with such intrusions as malice and recklessness done for the mere purpose of invasion of privacy. The information Defendant used to contact A.F. was on a public platform social medica accounts, where Plaintiff's posted public updates and pictures of A.F.. Therefore, the unaccustomed acts, although amounting to a disregard of due procedure, cannot be categorized as a substantial infringement of privacy on California's strict threshold. This would require a full trial setting as opposed to summary judgment because of its complex nature and intent.

## G. PLAINTIFFS' ARGUMENT 4

### 1. Summary Judgment Should be Granted on Plaintiffs' Sixth Cause of Action Against the Individual Defendants for Negligence.

The elements of a negligence claim are a legal duty of care, breach of that duty, and proximate cause resulting in injury. *Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 998 (2013).

### a.  The Individual Defendants owed Plaintiffs a duty of care.

The existence and scope of duty are legal questions for the court. *Merrill v. Navegar*, 26 Cal. 4th 465, 477 (2001) (citation omitted.) In determining those questions, courts "begin always with the command of . . . section 1714, subdivision (a)." *Id*.; *see also Brown v. U.S. Taekwondo*, 11 Cal. 5th 204, 213 (2021) ("The 'general rule' governing duty is set forth in Civil Code section 1714."). Section 1714 provides:

> Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

Cal. Civ. Code § 1714.

Except as otherwise provided by statute, a public employee is liable under section 1714 for negligence "to the same extent as a private person." Cal. Gov. Code § 820(a). No exception to a public employee's duty should be made unless clearly supported by public policy. *Rowland v. Christian*, 69 Cal. 2d 108, 112 (1968)

As a public employee, Defendant Coronel owed Plaintiffs a duty of ordinary care or skill. She has not and cannot plead any exception to this duty. Even as a private person, Defendant Coronel owed the same duty, for which she has not and cannot plead any exception. As private persons, Defendant co-conspirators Tamara Coronel and Warren Paul also owed a duty of ordinary care to Plaintiffs.

### b.  The Individual Defendants breached their duty.

Defendant Coronel admitted to using her County issued passwords and user ids, on County laptops, in order to access the CMS/CWS for personal use.  (JAF No. 18, Coronel Depo, 145:4-9; 157:22-25.) Moreover, it is undisputed that the County

27

confirmed that Defendant Coronel accessed Plaintiffs' closed adoption records on June 11, 2021. (JAF No. 18, COUNTY-001444 Trace Results, COUNTY-001786-001791, Notice of Data Breach Letters.) As Defendant Coronel testified, Defendants Tamara Coronel and Warren Paul knew, requested, and conspired with Defendant Tara Coronel to commit her unlawful breach. (JAF No. 17, Coronel Depo, 36:18-23.)

### c.  The Individual Defendants' breaches caused Plaintiffs' injuries.

Courts will resolve cause-in-fact issues at the summary judgment stage when "reasonable minds will not dispute the absence of causation." *Nola M. v. University of Southern California*, 16 Cal. App. 4th 421, 428 (1993). As with other elements of negligence, the plaintiff need only show causation by a preponderance of the evidence. *Leslie G. v. Perry & Associates*, 43 Cal. App. 4th 472, 482-83 (1996). Plaintiffs may meet this burden with direct or circumstantial evidence, so long as the inferences drawn from the circumstantial evidence are reasonable, i.e., more likely than opposing inferences. *Id.* at 483.

To satisfy causation, Plaintiffs must show "(1) that the defendant's breach of duty (his negligent act or omission) was a substantial factor in bringing about the plaintiff's harm and (2) that there is no rule of law relieving the defendant of liability." *Id.* at 481.

"The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." *Bockrath v. Aldrich Chemical Co.*, 21 Cal. 4th 71, 79 (1999). "If, as a matter of ordinary experience, a particular act or omission *might be expected* to produce a particular result, and if that result has in fact followed, the conclusion may be justified that the causal relation exists." *Osborn v. Irwin Memorial Blood Bank*, 5 Cal. App. 4th 234, 253 (1992) (emphasis added). Although present here, a negligent

act need not immediately precede the harmful event to be a substantial factor; if "the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another" it is a substantial factor. *Id*. Such a "natural and continuous sequence of events" does not "require an unbroken physical chain." *Maupin v. Widling*, 192 Cal. App. 3d 568, 575 (1987). Rather, "where the defendant's conduct is the stimulus for some other act which causes the injury, there is no break in the chain of causation." *Id*. at 575.

The causal chain here is straight-forward and obvious. Defendant Tara Coronel used the confidential information she obtained through County systems to make, and make possible for her co-Defendants Tamara Coronel and Warren Paul, contact with Plaintiffs. (JAF No. 18, 19; Coronel Depo, 33:9-40:20, 46:6-47:3, 145:20-24.) As a result, Plaintiffs suffered and continue to suffer emotional pain and injury. (JAF No. 27, A.F, Depo, 50:18-55:18; Felix Depo, 61:16-62:23, 98:7-18; Stuart Depo, 65:3-66:22, 76:18-23; Felix Decl. ¶ 22-31.) Access to and misuse of confidential adoption records to invade one's familial privacy is exactly the kind of event that "might be expected" to produce, and did in fact produce, Plaintiffs' harm, as described herein. *See* Section IV.A, *supra*.  In the absence of any evidence from the Individual Defendants, as to any rule of law relieving them from liability (as none exists), causation  of Plaintiffs' injuries is clear and summary judgment  should be granted in Plaintiffs' favor on their Sixth Cause of Action against the Individual Defendants for negligence.

## H. DEFENDANT CORONEL'S ARGUMENT 4

The claim of negligence hinges on the establishment of a duty of care and its breach, resulting in injury. Even with allegations of Defendant Coronel accessing the CMS/CWS database, it is crucial to differentiate between an act of policy violation and the legal concept of negligence causing injury. Defendant

29

Coronel's breach of workplace policy was not performed with negligent disregard for the Plaintiffs' emotional and psychological well-being. The emotional injuries claimed by the Plaintiffs cannot be directly attributed to the information accessed from the database. The complex emotional landscape surrounding adoption, particularly in cases involving older children with traumatic histories, suggests that numerous factors contribute to such emotional states, not solely the act of accessing information. Furthermore, the claim of negligence presupposes a direct causative link between the breach of duty and the injury. However, in this case, the connection between accessing information and the alleged emotional harm is not direct and is influenced by various intervening factors. Plaintiffs made the choice to call the defendant, nobody made them, Plaintiffs subjected themselves to **Voluntary Assumption of risk**: Plaintiffs were provided Defendants contact information, discussed contacting defendant as a family knowing A.F.'s history the best, and continued to make the choice to call Defendants twice, even after being upset during the first call.

## I.   PLAINTIFFS' ARGUMENT 5

1. **Summary Judgment Should be Granted on Plaintiffs' Seventh Cause of Action Against the Individual Defendants for Larceny.**

    a. **The Individual Defendants knowingly accessed, took, and made use of or caused to be used a computer system, computer system, or computer network.**

California Penal Code Section 502(c)(2) imposes criminal and civil liability on a person who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network." California Penal

Code Sections 502(c)(3) and (7) impose, respectively, liability on a person who "[k]nowingly and without permission uses or causes to be used computer services" and "[k]nowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network."

Section 502(c) "does not require *unauthorized* access. It merely requires *knowing* access." *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2016) (emphasis in original) (holding that "the term 'access' as defined in the California statute includes logging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly"); and *see People v. Childs*, 220 Cal. App. 4th 1079, 1098-1102, 1104 (2013) (rejecting the argument that section 502 "was meant to apply only to unauthorized computer users –hackers—and  not to an employee who was authorized to use the computer system but did so in a manner that vexed the employer").

Though Section 502(h)(1) exempts conduct occurring during the course and scope of employment, which is defined as performing acts "which are reasonably necessary to the performance of his or her work assignment," the "scope of employment defense" does not shield employees from prosecution for acts that were not reasonably necessary to the performance of the employee's work. *Id.* at 1103.

As outlined in detail above and multiple undisputed documents and admissions in the record, both Defendant Coronel and Defendant County have admitted that Defendant Coronel 1) knowingly and intentionally accessed the CMS/CWS computer system or network; 2) without permission or authorization; and 3) used the data from that access. (JFA No. 18, COUNTY-001444 Trace Results, Plaintiffs' Requests for Admission No. 1-6.)

Defendants Tamara Coronel and Warren Paul conspired with Defendant Coronel to violate Penal Code section 502. The elements of a civil conspiracy are

"(1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting." *See Mosier v. Southern California Physicians Insurance Exchange*, 63 Cal. App. 4th 1022, 1048 (1998) (internal citations omitted). Additionally, the co-conspirator's requisite concurrence and knowledge in the conspiracy "may be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances. Tacit consent as well as express approval will suffice to hold a person liable as a coconspirator." *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 785 (1979) (internal citations omitted). "[I]t is not necessary that [a conspiracy participant] should have joined the conspiracy at the time of its inception; every one who enters into such a common design is in law a party to every act previously or subsequently done by any of the others in pursuance of it." *de Vries v. Brumback*, 53 Cal. 2d 643, 648 (1960).

At the very least, Defendants Tamara Coronel and Warren Paul formed a tacit agreement to obtain and use, and did obtain and use, confidential information from closed adoption records by way of Defendant Coronel's credentials thereto. (JAF No. 18, Coronel Depo 33:9-39:25; 145:20-24.) Their possession of Plaintiffs' confidential information is the most damning evidence of their involvement in the conspiracy.

> **b. Plaintiffs suffered damage because of Plaintiffs' misconduct and therefore may bring private right of action for damages pursuant to California Penal Code section 502.**

Plaintiffs have standing to bring a civil action against the Individual Defendants for violation of the foregoing provisions of section 502(c), for compensatory, injunctive, and equitable relief. Cal. Penal Code § 502(e)(1). "Section 502 sets no threshold level of damage or loss that must be reached to impart standing

to bring suit. Under the plain language of the statute, any amount of damage or loss may be sufficient." *Mintz*, 906 F. Supp. 2d at 1032 (internal citation omitted) (holding that plaintiff experienced sufficient damage to support a private right of action because plaintiff "spent some time restoring his Gmail password and investigating who hacked the Gmail account").

Plaintiffs suffered damage because of Defendant Coronel's illegal access and the Individual Defendants' collective illegal operation. Plaintiffs expended time and resources to investigate the data breach, to locate appropriate points of contact at the County to report the breach and to participate in the County's investigation thereof. (JAF No. 28, Felix Depo, 51:20-53:6; Stuart Depo, 38:9-39:5, 40:4-41:13; COUNTY-001511 Concerns with Tara Email Chain), and, ultimately, retaining counsel and filing this litigation. (Dkt. 92.)

For these reasons, Plaintiffs are entitled to summary judgment against the Individual Defendants on their seventh cause of action for larceny.

## J. DEFENDANT CORONEL'S ARGUMENT 5

Defendant Tara Coronel's accusation of theft under CA penal code Section 502 hinges on the unauthorized use of computer data for personal gain or to cause harm. Defendant Coronel's actions were not driven by any intention to inflict harm upon the Plaintiffs. The purpose was solely to facilitate a choice for potential reconnection between A.F. and his biological father, not for any form of illicit benefit. Defendant Coronel did not alter, damage, delete, or destroy any data, computer, computer system, or computer network. Defendant Coronel did not attempt to defraud, deceive, extort, obtain money, property, or data. Defendant did not use information from any computer software to contact A.F. Defendant Coronel was provided information received from A.F.'s maternal side of the family and public social medica postings. Defendant Tara and Tamara Coronel, and

Warren Paul did not conspire a plan, as updates, and the desire to reach out to A.F. was done long before Tara Coronel had access to CWS.

The essence of theft involves a clear intent to deprive or harm, and this element is critically absent in Defendant Coronel's actions. The information accessed was not used maliciously or for any exploitative purposes. The alleged harm claimed by the Plaintiffs, was not a direct and intentional result of accessing the data but stemmed from the complexity of the circumstances surrounding adoption and familial relationships. Therefore, the necessary elements to substantiate a claim of theft, particularly the intent to harm or gain, are not satisfied in this case. This matter, thus, merits further examination in a trial setting rather than summary judgment.

## V.  PLAINTIFFS' CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request this Court grant their motion in its entirety and enter an order granting summary judgment in their favor.

DATED: November 27, 2023        */s/ Je Yon Jung*

Je Yon Jung, Esq. (SBN: 329744)
333 City Blvd. West,
Suite 327
Orange, CA 92868
(818) 869-6476
jeyon@mayjung.com

*Attorney for Plaintiffs*

DATED: XXXXX        [DEFENDANT CORONEL SIG. BLOCK]

34

**[NOTE: DEFENDANT CORONEL DID NOT PROVIDE HER SIGNATURE BLOCK; PLAINTIFFS ONLY MADE CHANGES TO ENSURE UNIFORM NUMBERING FOR THE SECTIONS, SPACING, AND THE FONT,  BUT MADE NO SUBSTANTIVE CHANGES TO THE JOINT BRIEF]**

35