Je Yon Jung, Esq. (SBN #329774)
**MAY JUNG, LLP**
333 City Blvd. West
Suite 327
Orange, CA 92868
(818) 869-6476
jeyon@mayjung.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. STUART, JOSE L. FELIX, and A.F.<br><br>    Plaintiffs,<br>vs.<br><br>COUNTY OF RIVERSIDE, TARA CORONEL, TAMARA CORONEL, WARREN PAUL, and DOES 1 THROUGH 10,<br><br>    Defendants. | CASE NO.: 5:22-CV-0701-SPG (MAR)<br><br>**PLAINTIFFS' MOTION FOR SPOLIATION OF EVIDENCE BY DEFENDANTS COUNTY AND TARA CORONEL AND REQUEST FOR SANCTIONS**<br><br>HEARING DATE: January 17, 2024<br>TIME: 1:30 P.M.<br>COURTROOM: 5C |

**MOTION FOR SPOLIATION OF EVIDENCE BY DEFENDANTS COUNTY AND CORONEL AND REQUEST FOR SANCTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES**

COME NOW Plaintiffs, Thomas E. Stuart, Jose L. Felix, and A.F., by and through undersigned counsel, and file this Memorandum of Points and Authorities

1

in support of their Motion for Spoliation of Evidence and Sanctions against Defendants, the County of Riverside (the "County") and Tara Coronel ("Coronel") (collectively "Defendants").

## I.      INTRODUCTION

The heart of this case is about the egregious violation of a family's privacy and Defendants' actions and omissions directly causing the use and abuse of County government equipment, networks, and data to invade the fundamental family relationship and association in which every United States citizen has a constitutionally protected liberty interest. This motion arises out of the Defendant County's and individual Defendant Coronel's destruction of electronically stored information ("ESI") maintained on a County-issued laptop and cell phone and Coronel's cell phone and/or other personal electronic device.

This destruction of ESI constitutes spoliation under Federal Rule of Civil Procedure 37(e). Given the relevance of this ESI, the County had a duty to preserve it the moment it reasonably anticipated litigation, which occurred no later than June 30, 2021, as evidenced by County employees' written correspondence acknowledging the matter could potentially result in litigation. Likewise, Coronel had a duty to preserve ESI no later than June 11, 2021, when she knowingly unlawfully accessed the County's confidential database.

Notwithstanding this duty, the Defendants proactively and affirmatively caused the ESI to be deleted. Specifically, the County wiped clean the County-owned laptop used in the data breach and Coronel deleted her Instagram direct messages to the water polo club; purchased a new cell phone and did not maintain the ESI on her cell phone or make a backup of her i-Cloud data, including data related to her social media searches related to Plaintiffs.

This destruction of evidence was inexcusable and justifies the harshest of sanctions. Defendants' conduct, and the circumstances and timing of the spoliation, evidence an intent to deprive Plaintiffs of the use of the destroyed ESI. Consequently, this Court should enter a default judgment against Defendants, or, at the very least, enter an adverse inference instruction at trial. But even if the Court does not find intent to deprive, it should still impose serious sanctions because Plaintiffs have been prejudiced by the destruction of this damning evidence. The Court should also award attorneys' fees and costs to Plaintiffs associated with the preparation and filing of this Motion.

Accordingly, and for the reasons set forth below, this Court should grant Plaintiffs' motion and impose sanctions on Defendants, as that is the only way to cure the damaging effects of Defendants' destruction of evidence in this case.

## II.   FACTUAL BACKGROUND

### A. Coronel's Illegal, Unauthorized Access to and Use of Plaintiffs' Records.

Defendant Coronel was employed by the County, under the supervision and management of Sayori Baldwin, Bridgette Hernandez, and Brianna Hall, as a Social Services Practitioner III. At a minimum, on June 11, 2021, during her remote status employ with the County, Coronel turned on her County-issued laptop, logged into the CWS/CMS System using her County-issued userid, and one or more passwords, and without authorization or a business purpose, accessed Plaintiffs' "closed adoption file." (Ex. 1, Defendant County of Riverside's Supplemental Response Plaintiff Thomas E. Stuart's First Set of Interrogatories, Request Nos. 1, 2 ("Suppl. Response 1, 2"); Ex. 2 State trace results; Ex. 3, Notice of Data Breach to Thomas Stuart; Ex. 4. Notice of Data Breach to Jose Felix; and Ex. 5 Notice of Data Breach to A.F. and Ex. 6 Defendant County of Riverside's Response Plaintiff Stuart's Fifth Set of Interrogatories, Request No. 17 ("Response 17")). Through this access, Coronel obtained information about Plaintiffs, including, but not limited to: first and last names, including the undisclosed adopted name of A.F.; address at the time of placement; A.F.'s social security number; and dates of birth. *Id.* Ex. 1-5.

On the same day that Coronel performed her unauthorized, illegal search, from which she obtained confidential adoption information about Plaintiffs, Coronel

contacted Plaintiff A.F.'s Rose Bowl Water Polo team page through Instagram, disclosing information she obtained through her unauthorized access that same day and inquiring about A.F. (Ex. 7 Ciaramitaro Decl. ¶ 24, and Ex. I.) The Rose Bowl Water Polo Club responded on June 11, 2021, at 11: 24 a.m. stating that it "can't give out athlete's info, but you can send over your email address / phone and we can forward to parents." (Ex. 7, Ciaramitaro Decl. at ¶ 25.)

### B. Plaintiffs' Notice to the County of the Data Breach.

On or about June 21, 2021, after traumatic and distressful telephone calls with Coronel on or about June 18, 2021 and June 19, 2021, during which Coronel provided multiple explanations about the source of her information, including a private investigator and access to A.F.'s adoption file, Plaintiffs became suspicious of Coronel's access and knowledge of such confidential and private information regarding A.F. (Ex. 8 Stuart Depo 38:7-19 ). Through an internet search, Stuart discovered that Coronel was a social worker with the County of Riverside. (Ex. 8 Stuart Depo 38:7-19). Stuart called the County and was eventually routed to Bridgette Hernandez, Coronel's supervisor. (Ex. 8 Stuart Depo 39:20-41:13, Ex. 9 COUNTY-001486-001487.)  Stuart informed Hernandez of Coronel's contact, the statements that she made during the calls, and the Plaintiffs' belief that Coronel had

used her position to access Plaintiffs' confidential information contained in "adoption paperwork." *Id.*

On or about June 29, 2021, during a phone call between Felix and Thomas and County employees Kevin Cooney, Senior Human Resources Analyst, and Celeste Macias, Human Resources Analyst, Felix and Stuart requested to be notified as to the results of the County's investigation and for verification that Coronel had "compromised our information." (Ex. 10, Felix Depo. at 73:19-74:15.) The County employees stated they "needed to speak to the attorneys" to understand what information could be shared. *Id.*

## C. The County's Investigation into the Data Breach and Anticipation of Litigation.

On June 22, 2021, Plaintiffs' concerns were forwarded to the "HR Investigations Unit-Human Services." (Ex. 9, COUNTY-001486.) Various avenues were discussed including an audit, forensic review, and paid administrative leave (*Id.*, COUNTY-001479-001485.) Moreover, on June 30, 2021, Macias stated in an email to various County employees, "I believe this could potentially turn into some sort of litigation down the road." (*Id.*, COUNTY-001479-001487.)

On July 13, 2021, Coronel was required to be in the office at 8:30 a.m. to meet with the supervisor. (Ex. 11, COUNTY-001464.) Beginning at 9:00 a.m., calls, texts and emails were sent to Coronel on her work and her personal phone. (*Id.*,

COUNTY-001464.) Coronel did not respond until 10:17 a.m., when she submitted via email her prospective resignation to be effective in two weeks and requested a "union rep" for her interview. (*Id.,* COUNTY-001464.)

In considering how to handle her resignation, Cooney advised County employee, Chris Roselli, by e-mail to accept Coronel's resignation and request her to report to work tomorrow to turn in County property, and that Cooney would contact Coronel to schedule her Administrative Interview. (*Id.,* COUNTY-001463.) In that e-mail, Cooney also stated, "Chances are she won't appear for her interview with me but I'd like to have the record reflect that we attempted to interview her should a lawsuit arise out of this." *Id.*

It is the County's position that it could not complete its investigation and determine whether Coronel "took other actions and/or altered information" within the CWS/CMS systems. (Ex. 7, Ciaramitaro Decl. at ¶ 12.) The County also admits it did not perform a forensic audit as part of any investigation into the unauthorized access of A.F.'s juvenile records. (Ex. 7, Ciaramitaro Decl. at ¶ 13.)  Moreover, the County had clear policies and procedures for conducting a forensic audit and imaging Coronel's laptop, it never requested one. (Ex. 13 Polk Depo. 107:12-113:19; 76:18-22; 58:16-59:14; 106:16-107:9)

### D. The County's Spoliation of Evidence During the Ongoing Investigation in Violation of Its Own Policies and Procedures and Generally Accepted Practices for Data Breaches.

Despite the incomplete investigation, on August 23, 2021, the County reset Coronel's laptop, thereby deleting all data and metadata. (Ex. 7, Ciaramitaro Decl. at ¶ 15;  Defendant County of Riverside's Responses to Plaintiff Stuart's Second Request for Admissions (Ex. 12, "P's RFA 02"), Request No. 58.) Such action is contrary to generally accepted practice for the following reasons. (Ex. 7, Ciaramitaro Decl. at ¶ 17.) Moreover, the County also has admitted that text messages and e-mails from Coronel to her supervisor, Brianna Hall, while she was on paid administrative leave are also no longer available. (Ex. 14, Hall Depo. At 69:2-73:10 and Def. Response to RFA No. 47-49).

First, "it is inconsistent with generally accepted practices that an open investigation of a County employee who reportedly was unavailable for interview because she resigned, and thereby inaccessible for questioning, would not immediately be considered suspicious and her computer subject to a forensic preservation or forensic analysis." (*Id.,* Ciaramitaro Decl. at ¶ 17.) "Objective factual data was obtainable from Defendant Coronel's laptop but was ignored in favor of evidence related to an unreliable interview of a person for whom the County had substantial allegations of wrongdoing." (*Id.,* Ciaramitaro Decl. at ¶ 17.) Specifically,

"computers maintain web browser history that would provide meta-data used to show things like Tara Coronel's Google searches or Facebook/Instagram visited sites or searches, along with the exact date and time that these actions occurred." (*Id.* Ciaramitaro Decl. at ¶ 20). Indeed, such substantive evidence was ignored despite the County's expectation that Coronel would not attend any interview. (Ex. 11, COUNTY-001463.)

As to the deletion, the County has stated it is "unable to admit or deny as to whether any content or metadata was contained on the computer." (Ex. 12, Ps' RFA 02, Request No. 59). This is factually false because "[c]omputers by their very nature have meta-data and by resetting the computer it would have spoliated the meta-data, including but not limited to Tara Coronel's actions performed and stored on her computer." (Ex. 7, Ciaramitaro Decl. at ¶ 17.) Moreover, as the County's Chief Technology Officer testified in his 30(b)(6) deposition, a digital image—had one been requested and completed—of Defendant Coronel's laptop would have allowed the County to attempt to identity what sites she visited, among other things. (Ex. 13, Polk Depo.)

The County understands that a laptop contains meta-data, which could be useful in its investigation of Coronel's conduct, and that by resetting the laptop, it would spoliate the evidence once available on the laptop. (Ex. 7, Ciaramitaro Decl.

at ¶¶ 18, 19, 20.) This is evidenced by the testimony of County's Chief Technology Officer, that web history could be obtained by imaging a laptop. (*Id.*, Ciaramitaro Decl. at ¶ 18.) "Imaging is a process by which an electronic storage device, or laptop hard drive in this instance, is copied in a forensically sound manner, replicating the computer's hard drive. The image or copy created during this process can then be used to perform an investigation of the computer's data and its meta-data." (*Id.*, Ciaramitaro Decl. at ¶ 18.)

Second, the failure to preserve the laptop is inconsistent with generally accepted practices set forth under the Sedona Principles, Third Edition, Principle 5, which states  "…the duty to preserve is triggered when a claim is reasonably anticipated, or litigation is pending[,]" or Federal Trade Commission "FTC") best practice guide for responding to a data breach. (*Id.*, Ciaramitaro Decl. at ¶ 20.)

Third, the County has a clear procedure for conducting a forensic audit, which it elected not to follow in this case. (*Id.*, Ciaramitaro Decl. at ¶ 21.) The County's Digital Forensics Request and Authorization Form provides:

> "the standard operating procedure and mechanism by which County departments and agencies in conjunction with the County Executive Office ("EO"), Human Resources Department ("HR"), and Office of the County Counsel ("County Counsel") shall request and authorize County department and agency information custodians to carry out official, sanctioned actions in the acquisition and delivery of digital evidence in support of internal personnel investigations."

(*Id.,* Ciaramitaro Decl. at ¶ 21.) "Curiously and inexplicably, that request was not made in this case." (*Id.,* Ciaramitaro Decl. at ¶ 21.)

### E. Coronel's Spoliation of Evidence.

At a minimum, Coronel claimed that she knew that she was engaging in unauthorized access when she accessed Plaintiffs' information on a County-issued laptop, using County-issued userid and password(s). (Ex. 15, Coronel Depo. 69:23-70:12) She also claimed to know that she was violating policy when she conducted such access. (*Id.*) Thus, at a minimum, she should have reasonably anticipated litigation on June 11, 2021, when she knowingly breached the County's confidential database. Even if she did not anticipate litigation on June 11, 2021, she should have anticipated litigation when she was informed of the investigation and she resigned on or about June 30, 2021.

Coronel deleted social media messages about A.F. that she sent to Rose Bowl Water Polo Club after performing her unauthorized search of Plaintiffs' records. (*Id.,* Ciaramitaro Decl. at ¶¶ 25-27.) It is clear that Coronel deleted certain Instagram messages because Ex. I to Ciaramitaro's Decl. includes the missing deleted messages to the water polo club, yet Coronel's Instagram ESI collection no longer contains that message. (*Id.*)

Coronel also failed to preserve any phone data on the phone she used in the months surrounding the data breach. (*Id.,* Ciaramitaro Decl. at ¶ 28.) This data is no longer available because Coronel got a new phone "sometime" in 2022 and purportedly does not use iCloud. (*Id.,* Ciaramitaro Decl. at ¶ 28; *see also* Ex. G attached thereto at 132:16-17.) She does not remember the date and she is not even sure if it was before or after she had notice of this lawsuit. (Ex. 15, Coronel Depo. 131:16-132:5). At least by 2022, Coronel knew or should have known about her obligation to preserve evidence in this case, particularly given the unsupported hearsay she is now relying upon to claim that she had means other than the County database to obtain Plaintiffs' information and that the support for her unsubstantiated claims would be in her ESI. (*See* Defendant Coronel's Opposition to Plaintiffs' MSJ [Dkt. 124). Had she preserved her previous phone(s), a more thorough forensic investigation could have been performed into Coronel's claims that she had been aware of the information about A.F. and his adoptive parents prior to her illegal, unauthorized access to the CMS/CWS system. (*Id.,* Ciaramitaro Decl. at ¶ 28.)

**F. The County Formally Notifies Plaintiffs of the Data Breach.**

On September 14, 2021, the County issued a Notice of data breach letter to Plaintiffs, notifying Plaintiffs that it conducted an investigation through which it determined that the first and last name, address at the time of placement, and birth

12

date were accessed without authorization. (Ex.3, COUNTY  001786.) The letter

further indicated that "appropriate action is being taken" and that the staff member,

i.e., Coronel, "no longer works for DPSS and no longer has access to the case record."

(*Id.,* COUNTY – 001786.)

On October 18, 2021, Plaintiffs sent a Notice of Preservation letter to the

County, in which Plaintiffs indicated that "litigation will occur" with respect to the

data breach, and put the County on notice of its legal obligations, stating:

> "You are hereby advised that you are under a legal duty to retain,
> protect, and preserve all evidence pertaining to this incident. Including,
> but not limited to, the aforementioned files and data; any evidence
> concerning the breach, the manner of breach; the investigative file; the
> policies and procedures in effect at the time of the breach; e-mails, texts,
> phone logs related to dissemination of this confidential information;
> computer data and metadata related to the breach; and any other
> involved parties, witnesses, or investigators related to the data breach.

(Ex. 16) The letter also requested the County provide information regarding copies

of reports, investigations, computer data and metadata, witness statements,

photographs, and all audio/visual material related to, and/or depicting, the data

breach." (*See id.*)

On October 18, 2021, Plaintiffs also filed a Claim for Damages Pursuant to

Cal. Govt. Code § 910, et seq., which was rejected on November 15, 2021. (Dkt.

102, Exs. A, B.)

On April 25, 2022, Plaintiffs filed their Complaint in this action, naming Tara Coronel, three supervisory individuals, and the County of Riverside as Defendants, and ten does as defendants. (ECF No. 1 ("Compl.")). Plaintiffs amended their Complaint on June 12, 2023. (ECF No. 92.)

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 37(e) governs the preservation of ESI such as computer metadata, emails, and text messages. "Under Rule 37(e), spoliation occurs if: (1) the relevant ESI should have been preserved in the anticipation or conduct of litigation; (2) the ESI is lost because a party failed to take reasonable steps to preserve it; and (3) the ESI cannot be restored or replaced through additional discovery." *Brewer v. Leprino Foods Co., Inc.*, Case No. CV-1:16-1091, 2019 WL 356657, at *8 (E.D. Cal. Jan. 29, 2019) (quotations omitted).

Pursuant to Rule 37(e), the court may sanction parties responsible for spoliation of evidence in three ways. First, a court can instruct the jury that it may draw an inference adverse to the party or witness responsible for destroying the evidence. Second, a court can exclude witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence. Finally, a court may dismiss the claim of the party responsible for destroying the evidence.

*See* Fed. R. Civ. P. 37(e); and *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006) (citations omitted).

Importantly, a party's destruction of evidence need not be in "bad faith" to warrant a court's imposition of sanctions. *Id*. at 1066-1067 (citations omitted). District courts may impose sanctions against a party that merely had notice that the destroyed evidence was potentially relevant to litigation. *Id*.

## IV.   ARGUMENT

### A. Spoliation Has Occurred.

#### 1.   The ESI should have been preserved in the anticipation or conduct of litigation.

Under Rule 37(e), both the County and Coronel had "[a] duty to preserve evidence [from] the moment that litigation [was] reasonably anticipated." *Brewer*, 2019 WL 356657, at *8; *Porter v. City and County of San Francisco*, Case No. 16-cv-03771, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018) ("The duty to preserve evidence begins when litigation is pending or reasonably foreseeable"). This obligation can arise before litigation is formally commenced. *See Apple Inc. v. Samsung Elec. Co., Ltd.*, 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012); *see also CTC Global Corp. v. Huang*, Case No. SACV 17-02202 AG (KESX), 2019 WL 6357271, at *6 (C.D. Cal. July 3, 2019). For example, the obligation arises when a potential litigant informs a potential adversary about its claim. *See Oracle Am, Inc. v. Hewlett*

*Packard Enterprise Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018) ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.").

Here, the County reasonably anticipated litigation as early as June 30, 2021, as evidenced by the statement "I believe this could potentially turn into some sort of litigation down the road." (Ex. 3, COUNTY-001479-001487) Coronel anticipated litigation at least as early as June 11, 2021, or, at the latest, June 30, 2021, when she resigned.

The County and Coronel should have preserved the ESI in question because it is relevant to a claim or defense in the litigation. *See Brewer*, 2019 WL 356657, at *9. As cited throughout both the Defendant County and Defendant Coronel's motion or summary judgment briefs, they each rely on unsubstantiated hearsay evidence that would have been confirmed or denied by either the County's laptop and/or Coronel's cellphone. (Dkt. 124 and County's MSJ Dkt. TBD) The County and Coronel lack any legal or factual basis to dispute the relevance of deleted ESI. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (stating that a party "can hardly assert any presumption of irrelevance as to the destroyed documents").

16

### 2. ESI was lost because Defendants failed to take reasonable steps to preserve it.

While Rule 37(e) does not demand perfection in preserving ESI, it does demand reasonableness. 2015 Advisory Committee Notes to Fed. R. Civ. P. 37(e); *see also Matthew Enterprise, Inc. v. Chrysler Group LLC*, Case No. 13-cv-04236, 2016 WL 2957133, at *1 (N.D. Cal. May 23, 2016). Here, there is no question that the County and Coronel failed to take reasonable steps to preserve ESI—indeed, it appears they "took literally no action to preserve the information" at all. *Chrysler*, 2016 WL 2957133, at *3. Worse yet, Defendants caused ESI to be deleted despite knowing that litigation was likely. Plainly, by choosing to wipe the laptop and deleting related Instagram messages and buying a new cell phone without creating any backup, the County and Coronel did not "take reasonable steps to preserve [them]." *See Porter*, 2018 WL 4215602, at *3.

### 3. ESI cannot be restored or replaced through additional discovery.

Finally, there can be no dispute that the ESI has been irreplaceably lost. To be sure, "[i]nformation is lost for purposes of Rule 37(e) only if it is irretrievable from another source, including other custodians." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 107 (E.D. Va. 2018) (concluding that emails are lost when they are "deleted, were not part of another party's production, and are now irretrievable."); *see also Porter*, 2018 WL 4215602, at *3 (finding that call could not be restored or

17

replaced when "the only entity that maintained a copy of the call ... erased it");
*Chrysler*, 2016 WL 2957133, at *1 (finding emails lost under Rule 37(e) when business "made no effort to preserve communication" and did not complain when "outside vendor storing the [] communications deleted them automatically").

The ESI has been deleted, is not part of another's production, and cannot now be restored or replaced. *See WeRide Corp. v. Kun Huang*, Case No. 5:18-cv-07233-EJD, 2020 WL 1967209, at *43-*44 (N.D. Cal. Apr. 24, 2020) (finding third requirement satisfied even where some files could be recovered).

At bottom, because Defendants failed to meet their obligation to preserve ESI by destroying it, because Defendants have failed to offer any explanation for the location of the ESI or any alternate source for their discovery, and because Defendants' destruction has caused the ESI to be irreversibly lost, the destruction of the ESI qualifies as spoliation.

### B. Sanctions Should Issue Against Defendants.

#### 1. Defendants intentionally spoliated evidence justifying default judgment and/or mandatory presumptions in Plaintiffs' favor.

Spoliation is intentional where the evidence "shows[,] or it is reasonable to infer, that the [] party purposefully destroyed evidence to avoid its litigation obligations." *Porter*, 2018 WL 4215602, at *3. Both direct and circumstantial evidence may be considered in the inquiry. *Fast v. GoDaddy.com LLC*, 340 F.R.D.

18

326, 339 (D. Ariz. 2022) (collecting cases). In finding intent based on circumstantial evidence, courts consider, inter alia, "the timing of the destruction, the method of deletion (e.g., automatic deletion vs. affirmative steps of erasure), selective preservation, the reason some evidence was preserved, and, where relevant, the existence of institutional policies on preservation." *Laub v. Horbaczevski*, Case No. CV 17-6210-JAK (KS), 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020). Courts have inferred intentional spoliation where defendants purposely deleted emails and text messages. *See, e.g.*, *Oppenheimer v. City of La Habra*, Case No. SACV 16-00018 JVS (DFMx), 2017 WL 1807596, at *13 (C.D. Cal. Feb. 17, 2017). Courts also infer intent where individuals seek to "keep incriminating facts out of evidence. *First Fin. Sec., Inc.*, 2016 WL 5870218, at *3; *see also Porter*, 2018 WL 4215602, at *3.

Here, not only did the County not follow its clear procedure for conducting a forensic audit (Ex. 7, Ciaramitaro Decl. at ¶ 21), but also the County undertook affirmative steps of erasure.  Like the County, Coronel also took the affirmative step of destruction when she deleted the Instagram message and upgraded her cell phone without taking any backup efforts. The most logical inference to be drawn from Defendants' destruction of ESI is that Defendants intentionally deleted the information because it was incriminating. Even in the absence of such inference, the

complete failure of Defendants to take *any* measure to preserve ESI in light of a clear

duty to preserve counsels in favor of a finding that they intended to deprive Plaintiffs

of the use of this information.

Upon a finding of intent, Rule 37(e)(2) authorizes the Court to enter default

judgment. Default judgment would be appropriate here given Defendants' conduct

and the centrality of the deleted ESI to Plaintiffs' claims.

If the Court declines to enter default judgment, Rule 37(e)(2) also authorizes

an adverse inference to be made by the Court and/or the jury that the lost information

was unfavorable to the spoliating party. Fed. R. Civ. P. 37(e)(2)(A)–(B).  Three types

of adverse-inference instructions (listed from harshest to most lenient) exist: (1) an

instruction "that certain facts are deemed admitted and must be accepted as true";

(2) "a mandatory presumption"; and (3) an instruction that "permits (but does not

require) a jury to presume that the lost evidence is both relevant and favorable to the

innocent party." *Dish Network LLC v. Jadoo TV, Inc.*, Case No. 20-cv-01891-CRB

(LB), 2022 WL 11270394, at *3 (N.D. Cal. Oct. 19, 2022); *Apple Inc.*, 881 F. Supp.

2d at 1150; *see also Dae Kon Kwon v. Costco Wholesale Corp.*, 469 F. App'x 579,

580 (9th Cir. 2012) ("A fact finder may draw an inference against any party that

destroys or despoils evidence, but that inference is permissive rather than

mandatory.").

20

Plaintiff requests that the Court (1) make the following factual inferences:  the County laptop would have provided evidence that Coronel conducted a search of Plaintiffs' information; conducted an internet search and/or attempted or accessed Plaintiffs' social media sites after she engaged in the unauthorized access; downloaded information related to Plaintiffs' confidential information; and/or Coronel's cell phone would not have supported an internet search about and/or social media access regarding Plaintiffs before her unauthorized breach of Plaintiffs' confidential data on County equipment; (2) permit Plaintiffs to present evidence to the jury about destruction of ESI; (3) give an adverse inference instruction at trial that the jury must presume—irrebuttably—that the information contained in the ESI was unfavorable to Defendants; and (4) itself presume—irrebuttably—for purposes of any pre-trial, trial, or post-trial motions, that the destroyed ESI contained information unfavorable to Defendants. In addition, and relatedly, Plaintiffs request that the Court preclude Defendants from offering evidence or argument of any kind, including in the County's arguments for summary judgment or Coronel's opposition to Plaintiffs' motion for summary judgment that relies on any facts of evidence that would have been confirmed or rebutted by the spoliated evidence. Finally, Plaintiffs further request that the Court preclude Defendants from offering evidence or

argument of any kind that suggests Defendants' deletion of ESI was innocent or that

the deleted ESI was not unfavorable to them.

### 2. Even if this Court finds no intent, Plaintiffs are entitled to sanctions based on Defendants' prejudicial spoliation.

The bar for Rule 37(e)(1) sanctions based on prejudicial spoliation is set much

lower than 37(e)(2) sanctions based on intentional deletion, requiring merely that the

court find spoliation prejudiced the moving party. "An evaluation of prejudice from

the loss of information necessarily includes an evaluation of the information's

importance in the litigation." Adv. Comm. Notes to 2015 Amend. of Fed. R. Civ. P.

37(e). "The prejudice inquiry looks to whether the [spoiling party's] actions impaired

[the non-spoiling party's] ability to go to trial or threatened to interfere with the

rightful decision of the case." *Leon*, 464 F.3d at 959. Courts have found prejudice

where the lost documents "could have been probative" to an important issue in the

case. *See Chrysler*, 2016 WL 2957133, at *4 (finding prejudice because lost

contemporaneous communications "could have been probative" in case "hing[ing]

on negotiations"); *Brewer*, 2019 WL 356657, at *10 (finding prejudice where lost

ESI was "highly probative" of claims). Rule 37(e)(1) "does not place a burden of

proving or disproving prejudice on one party or the other" and instead "leaves judges

with discretion to determine how best to assess prejudice in particular cases." *Id.*

22

As evidenced by the Defendants' respective arguments in the two Joint Briefs for summary judgment, both the County and Coronel heavily rely on the claims that her admitted unauthorized access was not the basis for her contact with Plaintiffs. None of these unsubstantiated hearsay claims are supported by a single piece of testimonial, physical, or factual evidence. Moreover, Plaintiffs' ESI expert has presented uncontroverted expert testimony that the County had the means and ability to conduct imaging of Coronel's County laptop but deliberately—if not intentionally—chose not to do so and Coronel's veracity is not only at issue by her own termination for dishonesty from the County in 2018, she clearly deleted Instagram messages and failed to save information or even present any evidence to support her claims. Accordingly, Plaintiffs would suffer clear prejudice for the Court to allow the Defendants to rely on their bald claims.

As Plaintiffs have been prejudiced, the Court should permit Plaintiffs to "present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision," as long as this is "no greater than necessary to cure prejudice." Fed. R. Civ. P. 37, Advisory Committee Notes to 2015 Amendment.

### 3. An Award Of Attorneys' Fees Is Warranted Because of Defendants' Bad Faith.

Pursuant to Rule 37(e)(1), Plaintiffs should be awarded monetary sanctions on account of Defendants' spoliation of evidence. Here, as discussed above, Plaintiffs have suffered and will suffer prejudice because Defendants deleted relevant ESI. Therefore, Plaintiffs are entitled to an award of attorneys' fees and related costs covering their expenses associated with developing the record on spoliation and in bringing this sanctions motion, including time spent researching and preparing the motion and any subsequent supplemental briefings and hearings.

If the Court grants the requested relief, Plaintiffs will provide a full accounting of the attorneys' fees and costs related to this Motion after briefing and argument have been completed.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court should grant Plaintiffs' motion for sanctions.

Dated: December 20, 2023                **MAY JUNG LLP**

                                        /s/ Je Yon Jung
                                        Je Yon Jung, Esq. (SBN: 329744)
                                        333 City Blvd. West,
                                        Suite 327
                                        Orange, CA 92868
                                        (818) 869-6476
                                        jeyon@mayjung.com

24

Attorney for Plaintiffs

25

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 20, 2023, a true and correct copy of the foregoing document was sent via electronic mail and ECF filing to:

        DOUG SMITH, ESQ.
        KAREN CAPASSO, ESQ.
        SMITH LAW OFFICES, LLP
        4001 Eleventh Street
        Riverside, CA 92501
        951-509-1355
        dsmith@smitlaw.com
        kcapasso@dsmitlaw.com
        jszalonek@smitlaw.com
        Attorneys for Defendant County of Riverside

        Tara Coronel
        1967 Carroll Drive
        San Jacinto, CA 92583
        misstarac@yahoo.com
        In Pro Se

                             /s/ Je Yon Jung
                             Je Yon Jung
                             Attorney for Plaintiff